NOWLIN et al. v. CLARY et al. (No. 8202.)†

(Court of Civil Appeals of Texas. Ft. Worth. May 29, 1915. Rehearing Denied June 26, 1915.)

1. HUSBAND AND WIFE ☞274—COMMUNITY PROPERTY—RIGHTS OF HEIRS—CONVEYANCES IN SATISFACTION — SUFFICIENCY OF EVIDENCE.

In trespass to try title, evidence *held* sufficient to sustain finding of jury that deeds made by the plaintiff's father to the children of his first marriage were accepted in full satisfaction and settlement of the rights of the grantees in the community estate of their parents.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1026–1031; Dec. Dig. ☞274.]

2. HUSBAND AND WIFE ☞274—COMMUNITY PROPERTY—RIGHTS OF HEIRS—EQUITABLE DIVISION OF LAND — SUFFICIENCY OF EVIDENCE.

In trespass to try title, evidence *held* sufficient to sustain finding of jury that deeds of plaintiff's father to the children of his first marriage made an equitable partition of the parents' community estate between such children.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1026–1031; Dec. Dig. ☞ 274.]

3. HUSBAND AND WIFE ☞274—COMMUNITY PROPERTY—RIGHTS OF HEIRS—CONVEYANCES TO HEIRS—PRESUMPTION.

Where a husband divided among his children by his first wife portions of the community estate of himself and such wife, the deeds were to be presumed to have been advancements to the children for their interests in such community estate.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1026–1031; Dec. Dig. ☞274.]

4. EVIDENCE ☞471— OPINION — CHARACTER OF CONVEYANCE.

In trespass to try title by the child of a third marriage against the children by a first, testimony of a son by the first marriage that conveyances made by the father to the children of such marriage were intended as gifts to them, and were not accepted in full settlement of the children's interests in the community estate of the parents, was inadmissible in evidence as being merely the opinion or conclusion of the witness, especially in view of his testimony that he never saw the deeds and never heard the father say he had made them.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2185; Dec. Dig. ☞471.]

Appeal from District Court, Denton County; Chas. F. Spencer, Judge.

Action by S. A. Nowlin against John Nowlin and the unknown heirs of E. T. Clary. Judgment for plaintiff, and certain defendants appeal. Affirmed.

J. A. Templeton, of Ft. Worth, and Lee Zumwalt, of Dallas, for appellants. Robt. H. Hopkins and Alvin C. Owsley, both of Denton, for appellees.

DUNKLIN, J. This was a suit in trespass to try title instituted by S. A. Nowlin against the descendants of his father, Anderson Nowlin, by a former marriage, S. A. Nowlin being a son of a later marriage, and from a judgment in favor of the plaintiff, some of the defendants have appealed. Cynthia Nowlin was the first wife of Anderson Nowlin, and both she and he died intestate. The defendants are children and grandchildren of that marriage. Anderson Nowlin during his first marriage acquired title to two tracts of land in Denton county, one consisting of 320 acres, the south one-half of the Elisha T. Clary survey, and the other being the John Maloney survey of 640 acres. One hundred acres of the latter survey were sold by Anderson Nowlin during his first marriage, so that at the date of the death of his first wife he owned the 320 acres of the Clary survey and 540 acres of the Maloney survey, both of which tracts were community property of himself and Cynthia Nowlin. The plaintiff, S. A. Nowlin, and Thomas L. Nowlin were children of the last marriage of the said Anderson Nowlin, who died in 1888. On May 22, 1886, Anderson Nowlin made a deed of conveyance to the children of the last marriage of the land in controversy, consisting of 182 acres of the E. T. Clary survey. That deed was properly acknowledged and duly filed for record in the deed records of Denton county on November 24, 1886. The land so conveyed was the homestead of Anderson Nowlin during both of said marriages and up to the date of his death. The two sons by

the last marriage were minors when their father died, and they continued to live upon the place with their mother until the date of her death, which occurred about four years prior to the institution of this suit. Plaintiff claimed title through that deed and a deed from his brother, Thos. L. Nowlin, of all his interest in the land, and also under the statutes of limitation of five and ten years. He further pleaded a settlement by Anderson Nowlin with all the children of his first marriage of their interest in the community estate of their parents by deeds of conveyance to them of different portions of the two tracts belonging to the community estate of their parents at the date of the death of the mother. Between the first marriage and the last marriage mentioned above, Anderson Nowlin was married to another wife, but that marriage was dissolved by divorce proceedings, and no children were born of it. The unknown heirs of E. T. Clary were also made parties defendant, by reason of the fact that the record of the deed from said patentee to the Clary survey had been destroyed by fire in the burning of the courthouse in Denton county several years ago. Judgment was rendered against those heirs, and no complaint is made of that judgment. The descendants of the first marriage of Anderson Nowlin claimed an interest in the property in controversy as heirs of Cynthia Nowlin.

The trial was before a jury upon special issues, which issues, together with the findings of the jury thereon, are as follows:

"Questions submitted by the court on his own initiative:

"(1) Was the property in controversy acquired by Anderson Nowlin and his wife, Cynthia Nowlin, during their lifetime? Ans. Yes.

"(2) Did Anderson Nowlin during his lifetime execute deeds to land to the children of his marriage with Cynthia Nowlin? If so, how much to each? Ans. John Nowlin 50 acres; Henry Nowlin 50 acres; Mrs. Benson 50 acres; Mrs. Boyd 81.7 acres; Mrs. Knight, 78 acres; Mrs. Bell Minor 72 acres.

"(3) Was the land which was conveyed by Anderson Nowlin to the children of himself and Cynthia given by him and accepted by them respectively in full satisfaction and settlement for their rights in and to the community estate of the said Anderson and Cynthia Nowlin? Ans. Yes.

"(4) If you have answered the question just above in the affirmative, state briefly the evidence on which you base your answer. Ans. Because they were permitted to select their land where it suited them best.

"(5) When did Anderson Nowlin and his third wife marry? Ans. In 1870.

"(6) What was the date of the deed from Anderson Nowlin to the plaintiffs in this suit, and its record? Ans. May 22, 1886.

"(7) Did the plaintiffs live upon said land and make improvements thereon until the filing of this suit? Ans. Yes.

"(8) During the time that the plaintiffs and their mother lived upon the land in controversy did they make it their home until the death of their mother, and do the plaintiffs still occupy the same as their home? Ans. Yes.

"(8A) Did the plaintiffs claim said land during all the time they lived upon it? Ans. Yes.

"(9) During the occupancy of the plaintiffs of said land has any suit ever been filed by any one to interrupt the possession of the plaintiffs of said land? Ans. No.

"(10) During the time that plaintiffs lived upon said land have they been actually and visibly using, occupying, and enjoying the same? Ans. Yes.

"(11) Who has been paying the taxes upon said land during the time that plaintiffs have lived upon the same? Ans. Plaintiffs.

"(12) Did any of the defendants know that Anderson Nowlin had made a deed to the land in controversy to the plaintiffs in this suit until this suit was filed? Ans. Deed being of record, we answer, Yes.

"(12A) Did the defendants or any of them ever make any claims to this land before this suit was filed? Ans. No.

"Additional issues submitted at request of plaintiff:

"(1) During the time that the plaintiffs and their mother lived upon the land in controversy did the plaintiffs claim the land as their own, or occupy the same by virtue of any right of their mother? Ans. They claimed it as their own.

"(2) During the time that plaintiffs and their mother occupied the land in controversy in whose name was the land claimed, and in whose name was the taxes thereon paid? Ans. Plaintiffs'.

"(5) Had the plaintiffs paid all the taxes assessed against the land in controversy since the death of their father, Anderson Nowlin? Ans. Yes.

"(6) Did Alice Porter and her husband, C. O. Porter, and Beacher Minor execute and deliver to the plaintiffs a quitclaim deed to their interest in the land in controversy? Ans. Yes.

"(8) When Anderson Nowlin conveyed the land to the children of himself and Cynthia Nowlin, did they accept said land so conveyed to them and acquiesce in the acts of Anderson Nowlin in making such conveyance? Ans. Yes.

"(12) Did H. R. Nowlin die before or after the death of his father, Anderson Nowlin? Ans. Afterwards.

"(13) When was Lillie Jackson married? Ans. No direct evidence as dates.

"(14) What relation is plaintiff A. M. Boyd, known as Ada Boyd, to Anderson Nowlin, deceased, and who was her mother? Ans. Granddaughter; her mother was Minnie Sigler.

"(16) Did the deeds made by Anderson Nowlin to the children and grandchildren of his first wife, Cynthia Nowlin, constitute a fair and equitable partition of the community estate of himself and his first wife, Cynthia Nowlin, as between him and the children of said marriage? Ans. Yes.

"(17) After making the deeds to the children of his first wife, Cynthia Nowlin, how much land did the said Anderson Nowlin have remaining? Ans. 182 acres.

"(1) Were the deed records of Denton county, Tex., destroyed by fire? If so, when? Ans. In 1875.

"(2) Had Elisha T. Clary conveyed the land in controversy to R. H. Elliott prior to the destruction of the records of Denton county? Ans. Yes.

"(3) Did the defendants know that the plaintiffs were occupying and living upon the land in controversy after the death of their father? Ans. Yes."

The assignments are addressed chiefly to the findings of the jury as being unsupported by the evidence. It is insisted that there was no evidence to support the findings by the jury in answer to issue No. 3 in the first series of issues, that the deeds made by Anderson Nowlin to the children of the first marriage were made and accepted in full satisfaction and settlement of the rights of

the grantees in and to the community estate of their parents, nor the finding of the jury in answer to issue No. 16 in the second series of issues that those deeds constituted a fair and equitable partition of said community estate between Anderson Nowlin and the children of his first marriage.

Attention is called to the answer to issue No. 4 in the first series of issues, wherein the jury were instructed to state briefly the evidence on which they based their answer that the deeds were made in full settlement of the claims of the children of the first marriage, and to which issue the jury responded, in effect, that they made their finding to issue No. 3 because the grantees in the deed were permitted to select their land where it suited them best.

[1, 2] Attention is also called to the fact that those deeds which appear in the record do not purport to have been made for that purpose; some of those deeds reciting a consideration of love and affection and nominal sums of money paid in addition thereto. It would serve no useful purpose to discuss the evidence in full, but, after a careful consideration of the statement of facts, we have reached the conclusion that there is evidence sufficient to sustain the findings of the jury upon the issues mentioned above. John Nowlin, one of the children of the first marriage, was a witness on the stand. He spoke of the deeds from his father to the other children of the first marriage as deeds of gift. He further testified as follows:

"Of this 540 acres that was down on the creek there were three of the children that got 70 acres apiece of it. He gave the children their choice—to take 70 acres there, or 50 acres on the prairie. Those that took their part down on the creek they got more land; they got 70 acres apiece; and those that took our part up on the prairie, we got 50 acres apiece. I sold my 50 acres to Fox for a song. Yes; I sold it to Fox. My father deeded it direct to Fox; he said I didn't have to bother about the deed; that he would deed it to him. I took the land on the prairie in preference to that on the creek. It was not in 1869, after the war, that he deeded it to me; my wife lived on it before the war. My father set it apart to me, and my wife lived on it, but he didn't deed it to me. I went to the army. I went to war, and after I came back my father made the deed to the land to Fox when I sold it to him. At the time I went on it I took it to live on; he told me that he would give me that. * * * Those to take their part out of this timber land on the creek were William Minor, Arch Nowlin, and John Knight, I believe. The balance of the 540 acres on the creek was disposed of by my father some time after the war; he just let it go as he needed the money. When I came back and he made this division among the children, the balance of the land down on the creek he disposed of in some way. * * * Mary [a sister] married Bill Minor, and she took her part out of the timber land down on the creek. Jim died in the army without any heirs. Henry took his part out of the prairie land; he got 50 acres. Mrs. Benson took her part right west of Henry's, on the prairie; she got 50 acres. Delila [another sister], she married Knight; she took her's out of the timber land down on the creek; she was dead, and it went to her children. Her children got 72 acres. Arch Knight got his out of the timber land; my understanding was that he got 70 acres; that is what they got out of the timber land. I got my 50 acres on the prairie. Yes; that left this 166 acres for the two younger children; that was all the land."

C. S. Wilkins testified:

"I know that the children of his first marriage got some land. I know the land that the other children got. It is just about the same—very little difference; if anything, it was better land, take it all over, than the boys got; it will average better. * * * It was down on Hickory creek. Part of the land down on the creek was better than the prairie land, and part of it wasn't. * * * On an average, I don't suppose there is a great deal of difference. As to the values of the different tracts of land back in the 60's and 70's, will say I don't know; land wasn't worth very much nowheres."

[3] The deed by Anderson Nowlin to Fox was dated in 1869; another deed was dated February, 1876; and another in March, 1882. It thus appears from the testimony of the witness John Nowlin that a division was made by his father among his children, and the presumption must be indulged that, at all events, the deeds so made to them must be presumed as advancements for their interests in the community property of their parents. Sparks v. Spence, 40 Tex. 697; Williams v. Emberson, 22 Tex. Civ. App. 522, 55 S. W. 595. Clearly, it would be inequitable as between the children of the first marriage and those of the second marriage to hold that those conveyances should not be charged against the interests that the children of the first marriage inherited in the community estate of their parents. Brown v. Elmendorf, 87 Tex. 56, 26 S. W. 1043.

The evidence shows that the Clary survey was upon the prairie, while the other survey was partially in a creek bottom. The fact, as testified to by John Nowlin, that the children of the first marriage were given their choice to take 50 acres on the prairie or 70 acres out of the other tract, that some chose the prairie land and some chose the other, in addition to the testimony of Wilkins, in effect, that there was practically no difference in the value of the land deeded to the children of the last marriage and the land deeded to the children of the first marriage, the further fact, as shown by the record, that the tract in controversy was supposed to contain only 166 acres until it was surveyed long after the death of Anderson Nowlin, and then for the first time found to contain 182 acres, in connection with the further fact that none of the descendants of the first marriage ever asserted any claim to the land in controversy until after the institution of this suit, we think sufficient to support the findings of the jury referred to above.

[4] Error has been assigned to the refusal of the court to permit John Nowlin to testify that the several conveyances made by Anderson Nowlin to the children of the first marriage were intended as gifts to them, and were not accepted by them in full settlement of their interests in their mother's estate. One of the objections which plaintiff offered

to the testimony was that the same would be merely an opinion or conclusion of the witness, and we think that objection was valid, without regard to the merits of the further objection urged that it related to transactions or statements by Anderson Nowlin, deceased, in a suit between his heirs, within the meaning of article 3690, 3 Vernon's Sayles' Texas Civil Statutes; especially in view of the testimony of the same witness quoted already relative to the deeds made by Anderson Nowlin to the brothers and sisters of John Nowlin, in which the witness testified:

"I suppose he made them deeds to their 50 acres. I never saw one of the deeds, and never heard him say that he did; I never saw a deed that was made."

The proposed testimony of John Nowlin, at least so far as it related to the deeds to his brothers and sisters, would have been a mere guess or supposition and clearly inadmissible.

The foregoing conclusions render it unnecessary to discuss the further assignments presenting the contention that plaintiff failed to show title under the statutes of limitation, either of the five or ten years.

The judgment is affirmed.