Meigh Owen et al. v. The New York & Texas Land Co.

No. 1207.

1. **Wife's Separate Property—Conveyance by Husband.**

The husband cannot convey or charge the wife's interest in land constituting her separate property by a contract for its recovery in which she does not join in the manner provided by law for the conveyance of her separate real estate; and a transfer by him alone of his interest in a bond for title through and under which her right to such land accrues does not affect her title.

2. **Same—Evidence—Declaration of Husband.**

Declarations and statements by the husband adverse to the interest of the

wife in her separate property are not admissible in evidence in an action by the heirs of the wife to recover the property.

**3. Same—Deed of Wife Without Joinder of Husband.**

A deed by the wife alone, the husband not joining her, will not convey the title to land which' is her separate property.

**4. Same—Judgment—Wife Not Party.**

A judgment to which the wife is not a party does not operate to divest her title to land which is her separate property, though the judgment be taken under a contract made by the husband alone for the recovery of the land.

**5. Married Woman—Estoppel.**

In order for estoppel to bar a married woman in the assertion of her rights to her separate property, she must be guilty of fraud. Simply receiving the profits of an illegal sale, with knowledge of its execution, and assenting thereto, with an accompanying failure to properly assert her title, is not the character of fraud that will estop her.

**6. Same—Ratification—Refunding Purchase Money.**

The fact that a married woman accepts the benefits of a sale of her separate property made by herself in an illegal manner, without any act of disaffirmance, with full knowledge, does not amount to a ratification or estoppel, nor does it raise an equity against her right to recover the property, and without being required to refund the consideration which she has received.

**7. Bond for Title as Conveyance—Presumption of Payment.**

An instrument in the form of a bond for title, executed under the civil law in 1838, containing words of bargain and sale, with a promise to make another conveyance of the land when the patent should issue, conveyed the title; and after a great lapse of time, during which neither the grantor nor his heirs claimed against the instrument, it will be presumed that the consideration stated therein has been paid.

APPEAL from Robertson. Tried below before Hon. JNO. N. HEN-DERSON.

A statement of the facts appears in the opinion on motion for re-hearing.

*W. W. Ballew* and *W. O. Campbell*, for appellants.—1. No married woman can be bound by the statement and declarations of her husband in reference to and concerning the title of the wife's separate estate, and especially when such statements and declarations are not made in presence of and acquiesced in by the wife. Posey U. C., 360, 365; 8 Texas, 178; 14 Texas, 583.

2. To estop a married woman or her heirs from asserting right to land, she must be guilty of some positive fraud, or some act of concealment or suppression which in law would be equivalent thereto. Johnson v. Bryan, 62 Texas, 623; Smith v. Powell, 23 S. W. Rep.; Pom., Eq. Jur., sec. 1083.

3. Contract of husband and conveyance of wife's separate property, even under power of attorney, is void. Cannon v. Boutwell, 53 Texas, 626; Peak v. Brinson, 71 Texas, 310; Posey U. C., 35; 76 Texas, 37; 68 Texas, 261; 21 Texas, 40; 5 Texas, 195; 39 Texas, 98; 43 Texas, 340; 76 Texas, 359; 73 Texas, 289; 26 Texas, 737; 25 Texas, 129; 43 Texas, 79; 62 Texas, 108; 62 Texas, 623.

4. The conveyance from Slaughter to Ethan Stroud is not a common law instrument, and cannot be construed according to the rules

of common law, but must be construed according to the rules of law then in force. The conveyance vested in Stroud complete title, legal, as well as equitable. Gainer v. Cotton, 49 Texas, 120; Hanrick v. Barton, 16 Wallace, 174.

*West & Cochran* and *Ben B. Cain*, for appellee.—1. A. Owen was Mary Owen's husband, and as such had the care and management of her property. The statements and declarations made by him while acting in her interest and for the benefit of her separate estate, as he was acting while trying to induce Walker to bring suit upon a bond for title apparently outlawed and unexecuted, were in the scope of his authority and binding upon his wife. Paschal's Dig., art. 4636; Id., 4641; Milburn v. Walker, 11 Texas, 329; Dalton v. Rust, 22 Texas, 133; Womack v. Womack, 8 Texas, 397; Perkins v. Baker, 38 Texas, 353; Ryan v. Maxey, 43 Texas, 192; Grande v. Chaves, 15 Texas, 550; Williams v. Ellingsworth, 75 Texas, 480.

2. The bond for title being executory did not convey the legal title under either the Common or Civil Law. The legal title was in Slaughter until divested by suit brought in the name of J. C. Walker. Wilson v. Simpson, 68 Texas, 308; Levis v. Cole, 60 Texas, 341; Broussard v. Hull, 3 Texas Civ. Appeals, 66.

FISHER, CHIEF JUSTICE.—We reverse the judgment of the court below and remand the case for further trial, for the following reasons:

1. The contract between J. C. Walker and Dr. Owen, and what occurred between them with reference to the attempted conveyance of the land in controversy to Walker by Owen, was not admissible in evidence. Neither the declarations and statements of Dr. Owen adversely to the interest of his wife in her separate property, nor the attempted conveyance or transfer by him of the bond for title without her joining in its executions, would be admissible against his wife if she was seeking to recover her separate estate, and the same rule applies where her heirs are seeking their inheritance from her. What rights in her separate property remained undisposed of at the time of her death, descended to her heirs, and the existence of facts that would authorize her to recover if she had sued before her death would authorize her heirs to recover. McKay v. Treadwell, 8 Texas, 178; Clapp v. Engledon, 72 Texas, 254, s. c., 82 Texas, 293; Blois v. Findly, 75 Texas, 210.

The statute, it is true, gives the husband the authority to control and manage the separate estate of the wife, and to this extent he is in law her agent, but that power does not authorize him to dispose of her property except in the way pointed out by law, which must be by her consent expressed in the manner required by the statute regulating the conveyance of the separate property of the wife. Kempner v. Comer, 73 Texas, 199.

2. The statements of Maddox to the effect that he was the agent of Dr. and Mrs. Owens was not admissible for the purpose of proving

agency. Agency must be proven independently of the declarations of the agent.

3. The deed executed by Mrs. Owen to J. C. Walker was not admissible in evidence. Her husband did not join with her in its execution, although it may be inferred from the facts that he assented to its execution. Cannon v. Boutwell, 53 Texas, 627; Ford v. Ballard, 1 Texas Civ. App., 378. The court below admitted the deed not as proving title, but upon the issue of estoppel. This was upon the theory as contended for by appellee, that Mrs. Owen, the ancestor of appellants, was estopped from urging her title to the land for the reason that she knew of the contract previously made by her husband with Walker and that she tacitly assented thereto and that she long acquiesced in the terms of that trade and to the conveyance in question, and that she had received the purchase money for the land.

Without determining whether the evidence in any of these particulars supports the contention of appellee, we may concede that if it did, it would not establish an estoppel against Mrs. Owen. In order for estoppel to bar a married woman in the assertion of her rights to her separate property, she must be guilty of fraud. Simply receiving the profits of an illegal sale with knowledge of its execution, and assenting thereto with an accompanying failure to promptly assert her title, is not the character of fraud that will estop her. Smith v. Powell, 23 S. W. Rep., 1112; Ford v. Ballard, 1 Texas Civ. App., 378, and cases cited; Stone v. Sledge, 24 S. W. Rep., 698. In Johnson v. Bryan, 62 Texas, 626, it is said: "To estop a married woman from asserting her rights to land, it is essential that she should be guilty of some positive act of fraud, or else of some act of concealment or suppression which in law would be equivalent thereto."

4. The judgment obtained by Walker against the heirs of Slaughter was not admissible against those that are seeking to recover the separate estate of Mrs. Owen. Mrs. Owen was not a party to that judgment and she could not be affected by it. The alleged contract between Walker and Dr. Owens under which that judgment was obtained could not operate to pass the title of Mrs. Owen and vest it in Walker. The court below held that this judgment placed the legal title in Walker, who held it in trust for Mrs. Owen, and he being vested with the legal title could convey. Mrs. Owen had the title independent of this judgment, and it was vested in her prior to the time the judgment was obtained. We are at a loss to know what theory or principle of law will divest her of this title and lodge it in another without her consent being first obtained in the manner required by law, or give effect to a judgment to which she is not a party that places the title to her property in another.

5. We are of the opinion that the instrument executed by Francis Slaughter to Ethan Stroud conveyed a title to the land. This instrument was executed when the civil law was in force and we think falls within the ruling made in Gainer v. Cotton, 49 Texas, 120. It contains

words of bargain and sale, with a further promise to make another conveyance when the patent should issue. In the case cited it appears that the consideration was paid, while in this case there is no express finding or evidence showing that all the consideration was paid. But, in view of the fact that, since the execution of this instrument in 1838, Slaughter nor his heirs have ever asserted against it or claimed any of the land in controversy, but upon the contrary recognized that it conveyed title when they submitted to the judgment against them in the suit by Walker on that instrument when he urged it as the title to the land, we can, from these facts and the long lapse .of time since its execution, presume that the consideration was fully paid. Walker v. Emerson, 20 Texas, 707; 2 Greenl. Ev., secs. 527-528; 2 Whart. Ev.,. 1360 to 1365; 18 Am. & Eng. Encyc. Law, 207. But, admitting for argument's sake that the instrument is a bond for title, and only passes an equitable title to the land, this concession would not defeat the appellants' right to recover. The suit of appellee, it is true, is one for rescission and removal of cloud, but the appellants in reply thereto pleaded that they were the owners in fee simple of the land sued for and ask for their judgment for the same. This, in effect, so far as they were concerned, became an action of trespass to try title, and the provisions of the law regulating that remedy would apply. As held in Wright v. Dunn, 73 Texas, 296, and the Hyland case, 28 S. W. Rep., 210, an action of trespass to try title may be maintained on a bond for title; and the latter case held that, although the title may be equitable, stale demand will not defeat it. If suit in trespass to try title is brought on an instrument of this character against trespassers and strangers to it, evidence of payment of the consideration stated in the bond for title is not essential to the right of recovery. Wright v. Dunn, 73 Texas, 295; Ann Berta Lodge v. Leverton, 42 Texas, 18.

If the appellees do not fall within this class, as before said, the law under the facts of the case, and owing to the long time that has elapsed since the execution of the bond, will presume that payment of the recited consideration was made.

6. The disposition that we have made of the several questions discussed would probably settle the case and require us to render judgment in favor of appellants, but, in view of the fact that there is some evidence that speaks of a partition between Mrs. Owen and Mrs. Maddox,. we have concluded to reverse and remand the entire case.

*Reversed and remanded*

Delivered October 2, 1895.

---

### ON MOTION FOR REHEARING.

FISHER, CHIEF JUSTICE.—The facts of this case, briefly stated, are as follows:

This suit is by appellee to recover a part of the Francis Slauter head-

right and to remove cloud and quiet title. The appellants answered, claiming title as heirs of Mary Owen, deceased.

The land was patented to Francis Slauter July 29, 1841. May 30, 1838, Francis Slauter executed to Ethan Stroud the following conveyance:

State of the Republic,

Robertson County.

Know all men by these presents that I, Frs Slauter, am held and firmly bound unto Ethan Stroud in the sum of twenty-two hundred dollars for the true payment of which I bind myself, my heirs and assigns and executors and administrators.

In witness whereof I have hereunto set my hand and seal this 30th day of May, 1838.

The conditions of the above bond, or obligation, is such that I have this day sold unto Ethan Stroud a quarter of a league, of eleven hundred and fourteen acres, being a part of said Slauter headright located bounded on the East of Doct Hilar Galaspa.

The quarter sold Stroud is to be taken adjoining a quarter sold Beden Stroud on said headright, so as to leave said Slauter one quarter bounded on the West line of said league, for the price of one dollar per acre.

A note for one thousand dollars, payable two months after date, the balance paid in hand.

Now I bind myself to make or cause to be made good and warrantee title in fee simple to Ethan Stroud so soon as I receive a patent from the general government, and I bind myself to use all diligence to procure a patent from the government as soon as in my power lies.

Now if I comply with the above bond it is null, or else to remain in full force and virtue, the day and date above written.

    (Signed)                         Frcs. Slauter.   (Seal.)

Mary Owen was the wife of Dr. Owen, and the daughter of Ethan Stroud. As appears from the record, the estate of Ethan Stroud, who died about the year 1846, was partitioned and divided among his heirs, and the land in controversy went to Mrs. Owen and her sister, Mrs. Teresa Maddox. This partition was before any contract was made between Dr. Owen and J. C. Walker, which will be hereafter noticed.

There is some evidence, as shown by the statement of Capt. Maddox, as appears from the evidence of witness Walker, of a partition of the property that Mrs. Owen and Mrs. Maddox received from the estate of Ethan Stroud, and that the land in question belonged to Mrs. Owen. In 1856, Dr. Owen, then the husband of Mrs. Owen, made a contract with Walker to look up the title of Mrs. Owen to the Slauter lands, and for his services he was to receive one half.

The conveyance heretofore set out as executed by Francis Slauter was in 1858 found by Walker in the possession of one Roberts, who delivered the instrument to Walker. In March, 1859, Dr. Owen executed to Walker a conveyance of all his right, title and interest in

and to this instrument. The evidence of Walker also shows that Dr. Owen agreed to give him a half interest in the land for perfecting the title, and that Owen declined to bring suit in his own name or to incur any expense, and that it was understood between him and Walker, that he, Walker, might sue in his name. Walker did bring suit in his name against the Slauter heirs, in 1869, and recovered judgment against them for the land in controversy. Mrs. Owen or Dr. Owen were not parties to that judgment.

In 1872 Mrs. Owen and Mrs. Maddox executed to Walker a deed to this land which was not joined in by Dr. Owen. The consideration of the transfer was paid to Capt. Maddox, a son of Mrs. Maddox and a nephew of Mrs. Owen, who at the time was purporting to act for his mother and Mrs. Owen. The money was paid him when he delivered the deed to Walker and one Hays, who held Walker's title.

The appellee holds regular title from Walker. It does not expressly appear whether or not Mrs. Owen received the purchase money for said conveyance by her and Mrs. Maddox, nor does it appear from the evidence, except the declarations of Capt. Maddox, and from the fact that he had possession of the deed that was signed by Mrs. Owen and from the fact that he was claiming and purporting to act for her, that he was in fact her agent in that transaction. Dr. Owen at that time was living. But there are some circumstances shown by the record that may inferentially tend to show that Mrs. Owens may have received the purchase money and that Capt. Maddox was her agent. There is no evidence that she claimed the land after this conveyance, and there is some evidence that tends to show that she understood that she had conveyed it by this instrument that was delivered to Walker and Hays by Maddox. This deed was privily acknowledged by her as a married woman in the form required by law, but not joined in by her husband. She was not a party to the contract between Dr. Owen and Walker, when Walker claims that he was employed as a lawyer to look up the title by Dr. Owen, and was not a party to the conveyance by Dr. Owen to Walker, and never in the manner required by the law that regulates the disposition of separate property of married women did she convey any interest in the land to Walker. The evidence does not show any contract between her and Walker other than the deed executed in 1872, nor does it, except inferentially, appear that she knew of the contract between Dr. Owen, her husband, and Walker. It does not appear from the record that she made any statement or representation to Walker or his vendees that misled them or that induced them to act in the manner they did with reference to the suit that was instituted by Walker against the Slauter heirs, or in obtaining title from Walker. There is no evidence in the record that shows that Mrs. Owens or Dr. Owens during their lifetime claimed the land after the deed was executed by Mrs. Owens in 1872, nor is there any evidence that shows that Mrs. Owens denied Walker's right by reason of the contract he had made with Dr. Owens and by reason of the judgment

against the heirs of Slauter, and there is no evidence that shows that the Slauters were claiming the land adversely to the Stroud heirs before Walker brought his suit against them.

There is evidence that shows that a part of the consideration stated in the instrument executed in 1838, by Slauter to Stroud, was actually paid, and as to the remaining consideration the evidence is silent. It appears that appellee and those under whom it claims have been in possession of the land and paying taxes thereon since they purchased.

In the light of these facts we will dispose of the motion for rehearing. It is contended under the facts that Dr. Owens, by reason of the agency imposed upon him by law concerning the separate property of his wife, had the authority to employ Walker in his capacity as attorney at law to find the instrument executed in 1838 by Slauter and to establish the title of Mrs. Owens thereunder; the contention being that as the instrument was lost, and as Mrs. Owen's rights in the premises were uncertain, her husband, without her consent expressed in the manner required by law, could make a valid contract binding her interest in the property conveyed by this instrument, and that his acts in this direction were for the preservation and benefit of her separate estate, and his conduct in this matter was not adverse to the interest of his wife. The statute undertakes to prescribe the power of the husband, and to that alone must he look for his authority in the premises. Art. 559, Sayles' Civil Statutes, requires that the husband and wife shall join in the conveyance of the real estate, the separate property of the wife, and, as held in Ford v. Ballard, 1 Texas, Civ. App., 376, and cases there cited, a conveyance not so executed is void. Art. 2851 declares what is the separate property of the wife, and gives the husband during marriage the sole management of such property. Art. 2854 authorizes the wife to contract debts for the benefit of her separate property. Similar provisions of law were in force at the time of the contract between Dr. Owen and Walker and the execution of the deed by Mrs. Owen in 1872. Art. 4636, Pasch. Dig., which authorizes the husband to sue for the effects of the wife, was in force at that time. The difference between this article and the present law on the subject, Sayles' Civ. Stats., art. 1204, is explained in Reed v. Allen, 56 Texas, 194. Since the decision made in Mayer v. White, 23 Texas, 181, and Hays v. Stoval, 23 Texas, 627, which was reaffirmed in Harris v. Williams, 44 Texas, 124, and many other cases, the law has been that, in this State the separate property of the wife can only be charged and bound in the manner expressly authorized by statute, and in effect that Milburn v. Walker, 11 Texas, 331, and other similar cases that announced a liability against such property on equitable grounds were impliedly, if not expressly, overruled. And the rule is as stated in Warren v. Smith, 44 Texas, 247, that to make the separate property of the wife liable, the contract must be by the wife herself or by her authority, and the effect of that case was to hold that the husband had no such agency by reason of his power to manage her property. In Reed v. Allen, 56

Texas, 193, it was sought to hold two married women bound by a judgment in a suit in which they were not parties, but in which their husbands were parties and which affected their separate real estate. The court in this case construed arts. 4641 and 4636, Pasch. Dig., which were in force when the contract between Dr. Owen and Walker was entered into and when Walker obtained his judgment against the heirs of Francis Slauter. The court says: "The other controlling question in this case is: Was the fact that the husbands of Mrs. Thompson and Mrs. Jeffus were parties to the original suit—they themselves not having been parties—sufficient to estop Mrs. Thompson and Mrs. Jeffus from contesting the title and possession of both Mrs. Walker and Mrs. Allen, or either of them, to the land in controversy, which is claimed to be the separate property of Mrs. Thompson and Mrs. Jeffus?

"It is another elementary principle that no one is bound by a judgment to which he was not a party, either actually or constructively. Mrs. Thompson and Mrs. Jeffus were not actually made parties. Were they so constructively? Clearly they were not, unless service upon the husband in such case was service in law upon the wife also.

"With us, husband and wife, as regards their personal property, unless when otherwise provided by statute, are separate and distinct persons in law. McKay v. Treadwell, 8 Texas, 180. The statute then in force gave to the husband, during marriage, the sole management of the wife's separate property. Pasch. Dig., art. 4641. It further gave him the authority to sue, either alone or jointly with the wife, 'for the recovery of any of the effects of the wife.' Pasch. Dig., art. 4636.

"With these exceptions the husband had no statutory authority to bind the wife in regard to her separate property. He could not alone dispose of it, or subject it for the payment of debts, or even renew a debt for which it was bound, so as to prevent the bar of the statute of limitations. Milburn v. Walker, 11 Texas, 344; McGee v. White, 23 Texas, 180.

"The word 'effects,' as used in the statute above quoted, in its ordinary legal sense does not mean real property. It is defined by our statute to include 'all personal property and all interest therein.' (R. S., art. 3138, subdiv. 12); whereas property is defined to include 'real and personal property.' Subdiv. 1.

"That it was not the intention that the word 'effects' should include real property is also apparent in the change of the phraseology of the above statute, Pasch. Dig., art. 4636, as made by the corresponding article, 1204, Revised Statutes, which provides that 'the husband may sue, either alone or jointly with the wife, for the recovery of any separate property of the wife,' etc.; substituting the words which are of a broader signification, 'any separate property,' for the words 'any effects.'

"In the case of Cannon v. Hemphill, 7 Texas, 188, cited by counsel for appellees, the wife herself was a party plaintiff to the suit. And in the case of Burleson v. Burleson, 28 Texas, 417, also cited, it was

held that a suit against the husband alone would, under the statute giving him the management of the wife's separate property, be sufficient to stop the running of the statute of limitations—affecting the question of possession only, not that of title.

"No case has been cited or has come under our observation (and it is believed that no well considered case can be found) which makes a judgment against the husband alone, and to which the wife was not otherwise a party, sufficient to divest her title to her separate property.

"In this connection it may be observed that the statute in express terms gives to the husband the right to sue alone for the benefit of the wife, not to defend alone. Although it may not be very apparent why the authority was given in the one case and withheld in the other, yet such is the plain letter of the statute.

"We are of opinion that the original judgment complained of was not binding on the rights of Mrs. Thompson and Mrs. Jeffus, either as against Mrs. Walker or Mrs. Allen."

These provisions of law noticed are all that may directly bear upon this question, and, construed as they are by the present line of cases, we must hold that the contract between Dr. Owen and Walker and the judgment in Walker's favor against the Slauter heirs were not conclusive of the rights of Mrs. Owen. At the time the contract was made between Dr. Owen and Walker the estate of Stroud had been partitioned and the land in question belonged to Mrs. Owen and Mrs. Maddox. Her right to the land was a present and existing one, and because the title paper—the instrument executed by Slauter which evidenced her title thereto—may have been lost would not affect the right that was once vested. The loss of the instrument did not destroy her title or reinvest it in the heirs of Slauter. Mrs. Owen and her brothers and sisters knew of the existence of the right and title of their ancestor Stroud in the land in question long before the contract was made between Dr. Owen and Walker. As the facts show that it was by agreement of the heirs of Stroud awarded in partition to Mrs. Owen and Maddox, before this time. The ignorance of the whereabouts of the instrument that created the title may have authorized the husband by reason of the power given him by law to manage the separate property of the wife and his consequent right of possession, to charge her estate with a reasonable expense and cost of regaining possession of the supposed lost instrument, as it is held that his authority to manage confers the power to obtain possession. If the suit of Walker had been simply to recover possession of the instrument, and if he was acting solely under the authority of the husband for that purpose, and as the instrument itself may be regarded as a chattel or construed, within the meaning of the word "effects," then, in that event, Mrs. Owen may have been bound by a contract and a judgment obtained in such a case. Reed v. Allen, 56 Texas, 193.

But here the case is entirely different, as the act of the husband is concerning the real estate of the wife. Because the title paper may

have been lost did not warrant him in bartering it away without her consent, and that expressed in the manner required by law. Any other rule would lead to the absurd holding that whenever an instrument in the line of the title of the wife to her separate property may be lost, the husband is immediately vested with the authority to convey a part of the estate in consideration of the recovery of the lost instrument. This would impose upon the statute that regulates the manner of conveying title to the separate estate of the wife an exception in favor of the authority of the husband that clearly is not contemplated by law. There is no presumptive authority vesting in the husband to affect the rights of the wife in her estate by reason of the power to manage and sue for it. Wofford v. Unger, 55 Texas, 484. Hamilton v. Brooks, 51 Texas, 145.

There is no pretence in this case that Walker and others did not know of the separate interest of the wife, nor is it shown that the wife misled any one by any conduct upon her part to their disadvantage.

Under circumstances such as these, a purchaser who must know that he is not acquiring the interests of the wife in the manner as required by law is entitled to very little consideration when he appeals to a court of equity to confer title upon him without the consent of the married woman expressed in the manner required.

A purchaser standing in this situation is entitled only to such consideration as may be expected in any case where he attempts to acquire rights in violation of law, or where the failure to acquire is attributable to his own negligence or want of care in accepting a title that is defective.

The statute provides a plain and certain rule upon the subject and it is not difficult for purchasers of the wife's property to see that it is observed, before they accept conveyances of such property and part with the consideration therefor. And the fact that the married woman accepts the fruits of the sale without any act of disaffirmance, with full knowledge, neither amounts to a ratification or estoppel, nor raises an equity against her right to recover. Fitzgerald v. Turner, 43 Texas, 84, and cases cited in original opinion. And the married woman who seeks to recover the estate so illegally conveyed is not required to refund the consideration received. Berry v. Donley, 26 Texas, 744; Moores v. Lenny, 2 Texas Civ. App., 295, and cases cited in original opinion. For, to hold her liable for repayment as a prerequisite to recovery, is to virtually destroy the force of the statute that regulates the conveyances of married women.

These are the only questions we desire to discuss in passing on the motion for rehearing, and we adhere to the ruling made in originally disposing of the case.

Motion overruled.

*Overruled.*

Delivered November 27, 1895.