JACKSON v. CARLOCK et al.    (No. 6125.)

(Court of Civil Appeals of Texas. Austin. Dec. 30, 1919. Rehearing Denied Feb. 11, 1920.)

1. HUSBAND AND WIFE �kö 187—NOTICE TO PURCHASER THAT MARRIED WOMAN'S VERBAL CONTRACT TO SELL HER LAND WAS NULLITY.

Where plaintiff knew that a defendant was a married woman, and that certain land was her separate property, the law charged him with notice of the fact that her verbal contract to sell it was an absolute nullity.

2. HUSBAND AND WIFE �kö 202 — ORAL PURCHASER FROM MARRIED WOMAN CANNOT BASE ALLEGATION OF FRAUD ON HER VOID PROMISE TO CONVEY.

In view of the statute relating to conveyance of a married woman's separate property, a married woman having had legal right, at any time before she signed and acknowledged a deed conveying her separate property, to refuse to do so, plaintiff purchaser to whom she had orally promised to convey cannot base an allegation of fraud upon her void promise to execute the conveyance.

3. SPECIFIC PERFORMANCE ⊦kö 43—SMALL EXCESS VALUE OF IMPROVEMENTS AND PAYMENTS MADE BY PURCHASER BY PAROL OVER VALUE OF USE OF LAND INSUFFICIENT TO WARRANT SPECIFIC PERFORMANCE.

Where the value of improvements made by a purchaser of land by oral contract together with the amount of money paid by him amount to only $56 more than the value of the use of the land while he had possession, he is not entitled to specific performance of the parol contract of sale to him, void under the statute of frauds, on any theory of part performance and making of improvements.

4. HUSBAND AND WIFE ⊦kö 181 — EFFECT OF MARRIED WOMAN'S ACT UPON RIGHT TO CONVEY SEPARATE PROPERTY.

The Married Woman's Act of 1913 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 4621, 4622, 4624) leaves the law as it was before in reference to the sale and incumbrance of the separate real estate of 'a married woman; that is, such a woman, though joined by her husband, cannot make a binding contract for the sale of her separate realty, with the exception that, if the husband refuses to join in conveyance or incumbrance, the wife only may procure a court order permitting her to convey or incumber without her husband's joining therein.

Appeal from District Court, San Saba County; N. T. Stubbs, Judge.

Suit by W. F. Jackson against Mrs. E. L. Carlock and another, wherein G. W. Gray interpleaded. From a judgment partially for and partially against plaintiff, also protecting the intervener, plaintiff appeals. Affirmed.

Walters & Baker, of San Saba, and Hart & Patterson, of Austin, for appellant.

J. C. Darroch, of Goldthwaite, for appellees.

KEY, C. J. W. F. Jackson brought this suit against Mrs. E. L. Carlock and her husband, J. C. Carlock, for the recovery of 320 acres of land, and, if not entitled to that recovery, then, in the alternative, for a decree enforcing specific performance of a parol contract for the sale of the land. G. W. Gray filed a plea of intervention, in which he claimed title to the oil, gas, and other minerals, under a lease contract with the Carlocks. The pleadings of the respective parties presented all the questions decided by the trial court and presented to this court for decision.

The court below rendered judgment against the plaintiff as to the land, but in his favor for the sum of $56, the difference between the sum paid by him as part of the purchase price, with the improvements made by him, and the value of the use of the land. The decree also protects the intervener, Gray, under the lease contract pleaded by him. The plaintiff has appealed.

The trial judge filed the following findings of fact and conclusions of law:

"Findings of Fact.

"(1) The court finds from the evidence adduced upon the trial of this·cause that the defendant Mrs. E. L. Carlock, as alleged in plaintiff's first supplemental petition herein, early in the month of October, A. D. 1917, was seized and possessed in her own separate estate of all that certain 320 acres of land lying and situated in San Saba county, Tex., known as abstract No. 32, certificate No. 31/202, survey No. 490, patented to the heirs of Gustave Bunson by letter patent No. 4, vol. 21, dated April 27, A. D. 1875, said patent recorded in Deed Records of San Saba County, Tex., in Book F, page 342, referred to for description by field notes, being the same 320 acres of land sued for herein.

"(2) That said defendant Mrs. E. L. Carlock was also seized and possessed of an undivided interest in a certain 500-acre tract of land situated north of and adjoining the above-described 320-acre tract in San Saba county, Tex., said 500 acres being the south half and northeast fourth of section No. 76, survey for the state by virtue of certificate No. 38/4424, issued to the Houston & Texas Central Railway Company, and sold by the state of Texas to F. M. Freeman as state school land, and that defendant Mrs. E. L. Carlock's undivided interest therein amounted to 100 acres of land, and her son, W. H. Freeman, who was a single man, and an adult, owned an undivided 320 acres in said 500-acre tract, and her daughter, Mrs. Annie Yarbrough, the wife of H. F. Yarbrough, owned the remaining undivided 80 acres.

"(3) That the defendants, Mrs. E. L. Carlock and her husband, J. C. Carlock, some time during the first week in October, 1917, made· and

entered into a parol contract with the plaintiff, W. F. Jackson, contracting to sell to him said 320-acre tract first above described, and said 100-acre undivided interest second above described, and 160 acres of the 320 acres above described as owned by W. H. Freeman, and 80 acres above described as owned by Mrs. Yarbrough, aggregating 660 acres of land, estimating said aggregate acreage at the time of said contract as being 666 acres, and the said defendants, Carlocks, representing to plaintiff, Jackson, at the time that the said Mrs. E. L. Carlock was authorized by her said son, W. H. Freeman, and her daughter, Mrs. Annie Yarbrough, to find a purchaser for their said undivided interest in said land, and that they would execute deeds therefor so that plaintiff could get full 660 or 666 acres of land.

"(4) That, in consideration of good and sufficient deed to all of said 666 acres of land, plaintiff, Jackson, was to pay to the owners of said land the sum of $8 per acre, aggregating the total price of $5,328, and the additional sum of $280.42, the amount balance due the state of Texas on the 340 acres, part of the above-described 500-acre tract of school land, which $280.42 the court finds was the only incumbrance against any of said lands so contracted, and said sum of $5,328 and $280.42, making total purchase price that plaintiff contracted to pay defendants for said 666 acres of land aggregating the sum of $5,608.42, payable as follows: The said sum of $280.42 to be paid immediately in cash, so that defendants could pay the same into the treasury of the state of Texas, and cause to be issued the patent for said land, and the further sum of $2,000 to be paid in cash upon the execution and delivery to plaintiff by defendants of their deeds of conveyance for said 660 acres of land, and the balance purchase money, to wit, the sum of $3,328, to be paid five years from the date of said deeds, for which balance purchase money plaintiff was to execute his promissory notes with 8 per cent. interest per annum from date, payable annually, past-due interest to draw interest at the same rate, with usual maturing and attorney's fees clauses, confessing the vendor's lien which was to be retained in the deeds when executed.

"(5) That plaintiff stated to the defendants, Carlocks, at the time he contracted to purchase said 660 acres of land, that he would not contract for or purchase any of said land unless they would convey and cause to be conveyed to him the full 660 acres or 666 acres as it might be, and that defendants, Carlocks, at the time assured plaintiff that they could and would make and cause to be made deeds conveying the 480 acres owned by the defendant Mrs. E. L. Carlock aforesaid, and the 240 acres owned by the said W. H. Freeman and Mrs. Yarbrough, if he would advance the $280.42, as aforesaid, to clear the school lands, and make the $2,000 cash payment, and execute his note for the $3,328 balance, as aforesaid.

"(6) That, at the time the above-described parol contract was made between plaintiff and defendants, plaintiff then owned a 105-acre tract of land in San Saba county, a few miles distant from the above-described land, and that plaintiff represented to defendants that in order for him to raise the money to make the cash payment required under their said con-

tract that it would be necessary for him to sell his home place aforesaid, and that he would do so and move onto the said 666 acres of land and make that his home, and at said time also owned another 200-acre tract in San Saba county lying about one-half mile from the 105-acre tract.

"(7) That the plaintiff and defendants had been talking trade on 320 acres of land for above one year prior to October 1, 1917, and that the plaintiff and Mrs. Ballard had been talking trade on the 105 acres of land for a year or two previous to said time, and that he sold said land to Mrs. Ballard on the 10th day of October, 1917, that he intended to use the purchase money obtained from said sale to buy the 320 acres of Mrs. E. L. Carlock, but that he also intended to sell said 105 acres whether he purchased said 320 acres or not, and that he did not rely solely upon the completion of his trade with Mrs. E. L. Carlock, as the only moving cause in making said sale.

"(8) That in obedience to said contract he did sell his home place, and with the proceeds of said sale advanced to defendants the said sum of $280.42, with which to pay out the school lands above mentioned, and the said land was patented by the state of Texas, and that subsequently by their deed dated May 11, 1918, the defendants Mrs. E. L. Carlock and husband, J. C. Carlock, executed in due form of law their good and sufficient deed to plaintiff conveying to him 100 acres of land, a portion of said section No. 76, H. & T. C. Ry., as they had contracted to do, and that plaintiff paid them in cash $80, and executed to them his vendor's lien note for the balance purchase money, to wit, $720, note dated May 11, 1918, payable to E. L. Carlock December 1, 1922, bearing interest at the rate of 8 per cent. per annum from date under the terms and conditions agreed upon, and the said note was delivered to defendants, and plaintiff duly filed said deed for record with the county clerk of San Saba county, and on said 11th day of May, 1918, Annie Yarbrough and her husband, H. F. Yarbrough, in obedience to said parol contract between plaintiff and defendants, executed and delivered to plaintiff their deed for the 80 acres of land so contracted as aforesaid, in consideration of the sum of $640 in cash, which plaintiff paid to defendants for the said deed, and that same was paid to said vendors by defendants, and the said deed was duly filed for record in the county clerk's office of San Saba county, and on the 16th day of May, 1918, in obedience to said parol contract, W. H. Freeman executed and delivered his good and sufficient deed to plaintiff for the 160 acres contracted to plaintiff as aforesaid in consideration of the sum of $1,280 in cash paid to defendants for him, and by them paid to him for said deed, and that said deed was duly filed for record by plaintiff with said county clerk; that all said deeds were duly and legally executed, acknowledged, and affixed with revenue stamps required by law.

"(9) That the three deeds above mentioned to plaintiff were caused to be prepared for execution and delivery at the special request of defendant Mrs. Carlock in compliance with said parol contract theretofore made in October, 1917, and that plaintiff paid to defendants of said original $2,000 agreed to be paid cash,

the sum of $150 during the month of December, 1917, and the remaining $1,850 at the time he received said three deeds from defendants, and that the $2,000 cash payment was applied by defendants and proportioned to said three deeds according to the arrangements made between them and the other vendors in said deeds, independent of and without any suggestion from plaintiff.

"(10) That it was understood by and between plaintiff and defendants at the time said parol contract was made in October, 1917, as aforesaid, that plaintiff should take possession of said 666-acre body of land and place such improvements thereon as he saw fit, and in conformity therewith plaintiff did move onto said land during the first three days of January, 1918, and that he made permanent and valuable improvements on the 320 acres of land in question, the land sued for herein, by erecting a hog-proof fence around about 8 acres of said land of the value of about $50, and planting about $10 worth of fruit trees in an orchard thereon, and doing certain grubbing, and all of about the total value of $60. And that said improvements were placed on said land with the full knowledge and consent of defendants at the time.

"(11) That plaintiff made said advancement and said cash payment for said deeds and executed his notes therefor and took possession of said lands and improved the same and sold his home as aforesaid, and accepted said three deeds, relying upon the parol contract aforesaid made with defendants, and believed that they would execute and deliver to him their good and sufficient deed for the remaining 320 acres of land sued for herein; that defendants knew that he was selling his home and was taking possession of the said premises and was improving the same, and was accepting the said deed aforesaid, paying cash and executing his notes, relying upon them executing to him their deed for said 320 acres of land, and all of which the court finds defendants were able to do, if they had so desired.

"(12) That on the 27th day of May, 1918, the defendant Mrs. E. L. Carlock caused to be prepared certain deeds from herself and husband, J. C. Carlock, each for 160 acres of the 320 acres of land sued for, to plaintiff, one a quitclaim deed, and the other a general warranty deed, reciting in one of said deeds a consideration of $15 cash and vendor's lien for $1,265, dated May 27, 1918, due December 1, 1922, payable to Mrs. E. L. Carlock, with 8 per cent. interest per annum, payable annually, and the other deed reciting a consideration of $10 cash, and a vendor's lien note for $1,270, dated May 27, 1918, due December 1, 1922, with 8 per cent. interest per annum from date, with usual maturing and attorney's fee clauses, said consideration having been originally agreed upon between the plaintiff and defendant. I find that said deed was signed and acknowledged by defendant Mrs. E. L. Carlock on the 27th day of May, 1918, and that she returned the next day, and asked her attorney, L. E. Patterson, who had prepared said deed, if it was necessary to put a mineral reservation clause in said deed in order to hold the mineral rights; that her attorney informed her that it was, and she then requested him to place such clause in the deed, which he then did, and that after said

mineral reservation clause had been inserted in the deed he again took her acknowledgment to the deed; that her husband signed the deed on the 28th day of May, 1918, and acknowledged it on that day; and that at the time he signed and acknowledged it the mineral reservation clause had been inserted in the deed. The quitclaim deed which was prepared at the same time as the above warranty deed I find was not signed by either of the defendants, and was not acknowledged by either of them. I find that the defendant Mrs. Carlock, at the time said deeds were being prepared, requested plaintiff's wife to sign the above-mentioned vendor's lien notes, and that he went home the same day to get his wife to sign same, and that the said deed, the warranty deed with mineral reservation in it, was left there in the office of the attorney who had prepared said deed, to be delivered to him when the notes were properly signed and returned, but that as so left for delivery said warranty deed contained a mineral reservation clause, and that when the plaintiff returned some five days later to secure this deed and the deeds to the 340 acres that he refused to accept the deed with the mineral reservation in it. I find that neither the warranty deed aforesaid or the quitclaim deed were delivered to the plaintiff, and that the notes and check for $25 were never delivered to defendants.

"(13) The court finds that plaintiff took said notes home and had his wife join with him in execution thereof, and a few days later returned to the notary's office in Goldthwaite with the notes duly signed by him and his wife, and delivered them to the notary together with his check for $25, cash payment, and demanded his deeds.

"(14) That on the 28th day of May, 1918, the next morning after defendant Mrs. E. L. Carlock had executed said warranty deed, she returned to the said notary public's office and caused to be inserted in said deed a clause reserving the mineral rights on said lands, and that her husband then signed and acknowledged said deed, after said mineral reservation clause was inserted, and this was prior to the time that plaintiff returned to said office with the notes and check, and said reservation clause was inserted without his knowledge or consent, and that the parol contract as heretofore found to have been made between them did not authorize defendants to reserve said mineral rights. The court finds that plaintiff refused to accept said deed with this reservation clause inserted, and that said deeds, notes, and $25 check were left as they were executed, without being delivered to either party at the time, and subsequently defendants called for and secured said deeds and have them in their possession, and that said notary still has said notes and check undelivered.

"(15) That prior to the 8th day of October, 1917, when the parol contract was made as aforesaid, plaintiff had for two or three years been leasing from defendants the 320 acres of land in question at the rate of 40 cents per acre, and had been paying the rent in advance every six months, and that the lease expired on the 15th day of October, 1917, and was fully paid for up to that time, and that said land is reasonably worth 40 cents per acre rental, and that the rental value of said land, the value of

the use and occupancy of said 320 acres of land from the said 15th day of October, 1917, to the date of rendition of judgment herein, is the sum of $144.

"(16) That the plaintiff, Jackson, at the time the parol contract was made to convey him the 660 acres of land in controversy in this suit, knew that defendant Mrs. E. L. Carlock was a married woman living with her husband, and that he had known of her status as such for several years previous to that time, and that he also at said time knew that the land in controversy in this suit was the separate property of the defendant Mrs. E. L. Carlock, and that the 100 acres, her interest in section 76, state school land, was her separate property, and that he knew all of said facts for a long time previous to the time of making said parol contract.

"(17) That at the time of making the parol contract aforesaid it was understood between the plaintiff and defendant that before the deal could go through the defendant Mrs. E. L. Carlock was to secure a deed from the Freeman heirs, viz. A. M. Freeman, Hy Freeman, and others, to the 166½ acres of land, the N. W. quarter of section 76; that said 166½ acres had been paid out to the state by defendant Mrs. Carlock and patented to said heirs, and she was then to deed the same to W. H. Freeman; that said arrangement was necessary to be made to get defendant's son, W. H. Freeman, to deed 160 acres of his interest in the remaining 500 acres of land to plaintiff, Jackson; that it was the intention of all parties that said Jackson was to have his 340 acres out of said section 76, all in one body, and that said W. H. Freeman was to have all of his land out of said section in one body; and that the defendant Mrs. E. L. Carlock secured the above-mentioned deed to said 166½ acres of land from the Freeman heirs on or about the 1st day of April, 1918, and the court further finds that all of said arrangements subsequently were made and deeds exchanged and title passed to the 340 acres of land as per deeds introduced in evidence, and described in other findings of fact.

"(18) That the defendant Mrs. E. L. Carlock had the right to apply the $2,000 paid her by plaintiff on the 340 acres of land, but that the plaintiff knew how it was being applied, and finds that he accepted said deeds on Tuesday following the 28th day of May, 1918, after he knew that defendants had refused to make him deeds to the 320 acres in controversy in this suit, unless he would accept deeds to said 320 acres containing clauses reserving the mineral rights in said land to defendant Mrs. E. L. Carlock.

"(19) That the plaintiff, Jackson, first learned from defendant Mrs. E. L. Carlock, and also from Attorney L. E. Patterson, during the month of April, 1918, and about a month or six weeks prior to the 27th day of May, 1917, that said defendant Mrs. E. L. Carlock had executed an oil and gas lease on the 320 acres of land in controversy to one J. T. McConnell, and that afterwards said plaintiff read said contract as it appears of record in San Saba county, Tex., showing there of record to have been executed by Mrs. E. L. Carlock as feme sole.

"(20) That subsequent to said parol contract, to wit, on the 16th day of March, 1918, the defendant Mrs. E. L. Carlock, without being joined thereby by her husband, J. C. Carlock, alleging therein that she was a feme sole, and acknowledging same as a feme sole, made, executed, and delivered a certain oil and gas lease upon the 320 acres of land sued for herein to J. T. McConnell, said lease recorded in Book 68, page 325, of the Deed Records of San Saba county, Tex., and she received therefor in cash from McConnell the sum of $400, that McConnell did not know at the time he leased said land and paid said money that she was a married woman then living with her husband, and the court finds that she was cognizant of the fact at the time she executed the same that she was executing the same as a feme sole, and that she willfully withheld from the attorney who drafted said lease that she was then a married woman then living with her husband.

"(21) That plaintiff caused to be prepared a written affidavit, signed and swore to same, and on the 6th day of July, 1918, filed same for record in the county clerk's office of San Saba county, Tex., reciting the fact that he had contracted to purchase said 320 acres of land from defendants, and was in possession of the same under said contract, and served notice in this way to the world of his claim to said land under his contract of purchase, said instrument duly recorded in the deed records of San Saba county, Tex., in Book 69, page 437.

"(22) That subsequently, by their lease dated September 1, 1918, but in fact executed about three weeks prior to the trial of this cause, and subsequent to the filing of this suit, and subsequent to the filing of suit to cancel same by said J. T. McConnell in this court, defendants executed a substitute lease to the said McConnell on said 320 acres of land, similar in all respects to the first lease, except that the substitute lease was executed by both defendants, in due form of law, and by them acknowledged, and reciting that same was given in lieu of the former lease, and to relate back to the date of said former lease.

## "Conclusions of Law.

"The court concludes from the foregoing findings of fact that under the statutes of Texas, and under the defendant's plea of coverture, and invoking the statute of frauds, the plaintiff is not entitled to recover said 320 acres of land from the defendant in his suit in form of trespass to try title, nor is plaintiff entitled to a decree of specific performance of said parol contract to compel deeds to said land from the defendants, and that the defendants are not estopped from pleading and relying upon their plea of coverture and statute of frauds in this case. But the court finds that the plaintiff is entitled to his judgment for the sum of $56, said sum being the difference between the sums of money advanced as found herein, together with the value of plaintiff's improvements, and the value of the use of said land.

"The court further concludes that the intervener has a good title to the lease contract as alleged by him, same being derived from defendants, and the contract relied upon by plaintiff not being entitled to be specifically performed, as above concluded."

## Opinion.

As presented in this court, no attack is made upon the trial court's findings of fact.

In fact, the only assignment of error presented in appellant's brief charges that the court erred in its conclusions of law.

[1] Appellant testified that he knew at the time the parol contract was made that Mrs. Carlock was a married woman, and that the property belonged to her in her separate right. He also knew that a portion of the 660 acres of land contracted for belonged to other persons, and that it would be necessary for the Carlocks to negotiate with such persons before there could be compliance with the contract upon their part. Knowing that Mrs. Carlock was a married woman, and that the 320 acres of land in controversy in this suit was her separate property, the law charged him with notice of the fact that her verbal contract to° sell it was an absolute nullity. Cross v. Everts, 28 Tex. 523; Stone v. Sledge, 87 Tex. 49, 26 S. W. 1068, 47 Am. St. Rep. 65; Owens v. Land Co., 11 Tex. Civ. App. 284, 32 S. W. 189, 1057, application for writ of error dismissed 93 Tex. 692; Krebs v. Popp, 42 Tex. Civ. App. 346, 94 S. W. 115, application for writ of error dismissed 101 Tex. 645, 94 S. W. 115; Daniel v. Mason, 90 Tex. 240, 38 S. W. 161, 59 Am. St. Rep. 815.

[2] The findings of fact, supplemented by the undisputed testimony, much of which was given by appellant himself, show that no fraud was perpetrated upon him, and that he was not misled by anything, unless it was by the parol promise to convey the land in controversy, which the Carlocks subsequently refused to do. Under the law Mrs. Carlock had the right at any time before she signed and acknowledged a deed conveying her separate property to refuse to do so; and therefore appellant cannot base an allegation of fraud upon her void parol promise to execute such conveyance.

In Cross v. Everts, supra, the husband and wife had made a parol contract to convey the homestead, which the wife subsequently refused to carry out, and it was held that such refusal gave no cause of action against her, and the court used the following language:

"In this case there is no fraudulent misrepresentation, no concealment, no deceit, no fraudulent imposition, nothing but a refusal to comply with an absolutely void promise to convey her homestead, which appellant knew Mrs. Everts had a legal right to retract at any time, even up to the last moment before it was consummated. However reprehensible in morals this failure to make good her promise may be, it is not fraudulent either in fact or in law, and gives to the appellant no right of action against her."

The statute regulating the conveyance of a married woman's separate property is just as imperative as to her separate acknowledgment, as the statute regulating the sale of a homestead; and by force of this statute a married woman has the right to repudiate and refuse to comply with her previous contract, whether oral or written, up to the time she declares to the officer who takes her acknowledgment that she does not wish to retract.

In Daniel v. Mason, supra, a married woman whose status was unknown to the purchaser executed a deed to her separate property, in which she was not joined by her husband. No representations as to her status were made by her at the time of the transaction, and the Supreme Court said:

"If the mere execution of a deed and receipt of the purchase money constitute an estoppel, then in all cases, though a married woman has no capacity to convey by deed wherein she is not joined by her husband, nevertheless the deed and its subsequent recording by the purchaser would pass the title by estoppel. Thus the attempt to make a conveyance which she has no legal capacity to make would of itself be held sufficient to estop her and her heirs from denying its binding force. This would virtually remove the disability of coverture. Such a rule has never been recognized in this state."

[3] Nor do the facts found by the trial court in reference to improvements in good faith take the case out of the statute of frauds. The value of such improvements, together with the amount of money paid by the plaintiff, amounted to only $56 in excess of the value of the use of the land during the time it was in plaintiff's possession; and therefore he was not entitled to specific performance of the parol contract, even though it should be held that Mrs. Carlock had the power to contract for the sale of her separate property. Considering the small amount, and value of the improvements referred to, and the fact that the plaintiff's use of the land was worth much more than the improvements, and the further fact that the trial court charged the defendants with the amount of the purchase money which had been paid, and gave judgment for appellant against both of them for the difference, we hold that the case does not fall within that class which, for equitable reasons, are held not to be within the statute of frauds.

[4] This brings us to a consideration of what is known as the Married Woman's Act of 1913 (Acts 33d Legislature, c. 32, Vernon's Sayles' Ann. Civ. St. 1914, arts. 4621, 4622, 4624). Prior to that enactment a married woman, though joined by her husband, could not make a binding contract for the sale of her separate real estate. That question was definitely settled by the Supreme Court in Blakeley v. Kanaman, 107 Tex. 206, 175 S. W. 674, and, unless the recent legislation just referred to requires a different holding, that decision is conclusive in support of the judgment rendered in this case.

The pertinent part of the statute as amended reads as follows:

"During marriage the husband shall have the sole management, control and disposition of his separate property, both real and personal, and the wife shall have the sole management, control

and disposition of her separate property, both real and personal: Provided, however, the joinder of the husband in the manner now provided by law for the conveyance of separate real estate of the wife shall be necessary to an incumbrance or conveyance by the wife of her lands, and the joint signature of the husband and wife shall be necessary to a transfer of stocks and bonds belonging to her, or of which she may be given control by this act: provided, also, that if the husband shall refuse to join in such incumbrance, or conveyance, or transfer of such property the wife may apply to the district court of the county of her residence, and it shall be the duty of the court, in term time or in vacation, upon satisfactory proof that such incumbrance, conveyance or transfer would be advantageous to the interest of the wife, to make an order granting her permission to make such incumbrance, conveyance or transfer without the joinder of her husband, in which event she may incumber, convey or transfer said property without such joinder."

Counsel for appellant cite and rely upon the case of Williams v. Doan, 209 S. W. 761, decided by the Court of Civil Appeals for the First District. In that case it was held that, where a married woman, without being joined by her husband, made a contract to pay a real estate broker a commission for effecting a sale of her separate estate, and the broker had performed that service, and she and her husband had' sold and conveyed the property to the purchaser procured by the broker, the latter was entitled to maintain an action against her for his commission earned in pursuance of the contract referred to. We do not regard that case as analogous to the instant case, though it may be conceded that some of the expressions in the opinion are in conflict with decisions which had been previously rendered by other Courts of Civil Appeals and by the Supreme Court. In fact, in disposing of the motion for rehearing, the court filed a brief opinion, in which it was stated that the motion called attention to the decision of the Supreme Court in Red River Nat. Bank v. Ferguson (Sup.) 206 S. W. 923, wherein that court announced a contrary holding to so much of the original opinion in Williams v. Doan as held that the amended statute recognized to the fullest extent that the wife has the power and capacity to contract debts, except such as she is specifically forbidden to contract under the express terms of that statute; and therefore the Court of Civil Appeals, in deference to the holding of the Supreme Court, withdrew that part of its original opinion, but adhered to the disposition it had made of that case.

In the Ferguson Case just cited Chief Justice Phillips, in an able opinion, analyzed and reviewed the statute as amended, and, among other things, said:

"The amendment of article 4621 under the act introduces a distinct change in the law in respect to the control and management of the wife's separate estate. Whereas under the former law its sole management was given to the husband, such management, together with its sole control and disposition is by the act given to the wife, *with the proviso that the husband's joinder shall be necessary to a conveyance or incumbrance of her real estate* and transfer of her stocks and bonds, with the authority given her, in the event of his refusal, to resort to the district court for a hearing as to whether such a transaction is to her interest, and in the case of a favorable judgment to execute such conveyance, incumbrance, or transfer alone. It provides that the homestead, whether the separate property of either the husband or wife, or the community property of both, shall not be disposed of except by their joint conveyance." (Italics ours.)

It is very clear, we think, as in effect stated by Judge Phillips, that the proviso in reference to the conveyance and incumbrance of the wife's real estate constitutes a limitation upon the previous portion of the statute, which declares that during marriage the wife shall have the sole disposition of her separate property. Prior to that time a married woman could not convey her separate estate unless her husband joined in the conveyance, and her separate acknowledgment was taken by an officer, and the proviso under consideration expressly declares that "the joinder of the husband in the manner now provided by law for the conveyance of separate real estate of the wife shall be necessary to an incumbrance or conveyance by the wife of her lands, and the joint signature of the husband and wife shall be necessary to a transfer of stocks and bonds belonging to her." The language quoted is followed with an additional proviso that, if the husband shall refuse to join in such incumbrance or conveyance, the wife may, by making a proper showing, procure an order of court authorizing her to make such incumbrance, conveyance, or transfer without the joinder of her husband.

As we construe the two provisos referred to, the act leaves the law as it was before in reference to the sale and incumbrance of the separate real estate of the wife, with only one exception, which, in substance, is that if the husband refuses to join in a conveyance or incumbrance of the wife's separate property, the wife may, but no one else can, procure an order of court permitting her to convey or incumber the property without her husband joining therein.

The second proviso of the statute, authorizing the wife *to* procure an order of court for the sale or incumbrance of her separate property without the consent of her husband, has no application to this case. In fact, no facts were pleaded which would have authorized the court to make such an order, but, on the contrary, the plaintiff alleged that both the husband and wife had failed and refused to carry out and consummate the parol

contract referred to. That averment shows that the wife, instead of asking permission of the court to consummate the sale, was repudiating the contract referred to.

Upon the whole, our conclusion is that the learned trial judge made the proper disposition of the case, because: First, the contract relied upon is within the statute of frauds, and therefore not enforceable; second, the land in controversy being the separate property of a married woman, her contract to sell it was not binding; and, third, the recent acts relating to the rights of married women do not change the law in that respect and render the contract valid. Therefore the judgment is affirmed.

Affirmed.