JANE SPARKS ET AL. V. MARTHA A. SPENCE ET AL.

1. Property conveyed by the father to the children of himself and of a deceased wife is, if a part of the community estate, presumed to have been conveyed in discharge of the interest of the children in such community estate to the extent of the value of the property so conveyed.

2. Nor is this rule varied by the fact that the conveyance to the child purports to be a gift, unless it appears that it was the intention of the father to make a gift in addition to, and not in satisfaction of, the child's interest in the community; and such intention may be shown, though not expressed in the conveyance.

3. In a contest between heirs each must account for whatever was received by way of advancement out of the community estate, unless it is shown that it was given with a different intention; and when the advancements were made of other than the community estate the question of inten-

tion with which they were made should be submitted to the jury. In either case the advancement is to be estimated at its value when made, and is to be deducted from the interest of the child receiving it in the community property, which is to be considered with reference to its value at the same time.

4. It is error to charge the jury to allow only such advancements as are equal to the interest of the party receiving the same in the property sued for.

5. While the laws of Spain and Mexico remained in force in Texas as to descent and distribution, the increase of cattle inherited by the children as part of the community of the deceased mother became, during the minority of the children, the separate property of the surviving father, and prior to the introduction of the common law (March 6, 1840) there was no statute changing the rights of the father in such property.

6. From the date of the introduction of the common law the father was chargeable with the increase and proceeds of sales of so many cattle as the children were entitled to on the death of their mother, due allowance being made for expenses, labor, and losses.

ERROR from Bell. Tried below before the Hon. J. P. Osterhout.

The facts are fully stated in the opinion.

*Herring & Anderson*, for plaintiffs in error.

*Walton, Green & Hill*, for defendants in error.

GOULD, ASSOCIATE JUSTICE.—W. C. Sparks and wife, Sarah, at the time of her death in 1836, held as community property two leagues of land ; one, on which they lived, in Brazos county; the other in Bell county; also a stock of cattle between fifty and one hundred in number. Five daughters and one son survived their mother, viz., Martha A., Harriet, Nancy, Elizabeth, Sarah and Stephen. In 1841 Martha A., the eldest daughter, was married to Isaac C. Spence, and at intervals after that, as in 1844, 1845, 1848, and ——, the others appear to have married, and, with the exception of Nancy, to have received from their father on marriage five cows and calves and a horse, saddle and bridle.

On July 5, 1846, W. C. Sparks conveyed to his daughter Martha A. Spence five hundred acres of the Brazos county league, the consideration expressed being natural love and affection. In February, 1847, he made a like conveyance to his son Stephen for eight hundred acres of the same league. In August, 1851, he, jointly with his second wife, Jane, whom he married about twelve months after the death of his first wife, executed a like conveyance to his daughter Sarah Hamner for one thousand acres of land in Freestone county, the separate property of his second wife. On July 10, 1852, he conveyed to his daughter Harriet Spence one-fourth of the league of land in Robertson county, apparently his separate property, the consideration expressed being four hundred dollars and natural love and affection.

To his daughter Nancy Elizabeth Bryant he conveyed, at some date not named, two hundred and sixty-seven acres of the Bell county league, which conveyance, we are left to infer, was like the others in its consideration and character.

In 1851 W. C. Sparks removed to the league of land in Bell county, and there, in 1857, he died, leaving a will. In this will he devised to the children of the first marriage (the plaintiffs) in equal shares 3000 acres of the Brazos league remaining undisposed of, and 1000 acres of land in Van Zandt county; and to Martha Ann Spence, daughter of his deceased daughter Nancy (who appears to have received no advancement in his lifetime), he bequeathed and devised in addition 300 acres of land in Henderson county, a good horse, saddle and bridle, and five cows and calves. The Bell county league, the stock of cattle, inventoried at 525 head, and sundry other property of his separate estate, he gave and devised to his wife and children of the second marriage. In 1858 this suit was brought by the children of the first marriage and their representatives against the children of the

second marriage and their mother, as executrix, claiming as heirs of their mother one-half of each of the two leagues of land, and one-half of the increase and proceeds of the cattle. On being required by the court to do so, the plaintiffs elected to give up the lands devised to them under the will, as being of less value than their interest as heirs of their mother's community interest in lands attempted to be devised away from them. The defendants set up the various conveyances to plaintiffs as advancements intended and accepted in satisfaction of their interest in the community.

The charge of the court was to the effect that if the advancements made by W. C. Sparks out of his own property to any of the plaintiffs were equal in value to their interest in the property bequeathed and devised to defendants, to find for defendants as against such plaintiffs.

No instructions were given to allow these advancements at all, if made out of the community estate, nor to allow them *pro tanto* if of less value than the interest of plaintiffs as heirs of their mother. The charge also in effect held W. C. Sparks responsible for one-half the increase and proceeds of the cattle from the time of his wife's death. The plaintiffs recovered a judgment for one-half of each of the leagues of land, to be laid off to them out of that part of the leagues not conveyed away by W. C. Sparks in his lifetime; also for the sum of $7052 coin, as their share of the proceeds and increase of the cattle. A motion for new trial being overruled, the defendants have appealed, assigning as error the charge of the court, especially the charge to find interest in favor of plaintiffs on the value of the cattle; also other matters not material to be noticed.

We think the record exhibits errors going to the foundation of the suit, and which cannot be overlooked, though they have not been definitely assigned.

Some of the plaintiffs received from their father in his lifetime, and have long enjoyed, part of the community lands, for one-half of which they sue. These conveyances purport to be gifts, and are *prima facie* advancements on the interest of the children in the community. The judgment rendered allows these plaintiffs to retain the share thus received, and gives them in addition their full interest in the entire half of the community lands. The father, it is true, might have so conveyed as to show an intention to make a gift in addition to, and not in satisfaction of, the interest of his child in the property, part of which he conveys. Proof might be made that such was his intention, though not expressed in the instrument. But it is most unreasonable to assume such an intention in the absence of proof. The natural conclusion is that the conveyance is made in discharge in full or in part of the obligation the parent is under to give the child his legal interest in the community estate, of which the land conveyed is part. The principle recognized in courts of equity as to advancements by a parent to a child is laid down as follows: "Where a debt exists from a parent to a child, an advancement upon the child's marriage, or upon some other occasion, of a portion equal or exceeding the debt in the parents life shall *prima facie* be deemed as satisfaction." (Plunkett v. Lewis, 3 Hare, 25 Eng. Ch., 323.) In that case Lord Hendricks is quoted as saying, "There are very few cases where a father will not be presumed to have paid a debt he owes to a daughter, when in his lifetime he gives her in marriage a greater sum than he owed her, for it is very unnatural that he would choose to leave himself indebted to her and subject to an account." (Id., and 2 Atk., 521.) These authorities are referred to as showing the unreasonable nature of the assumption that the advancements of a father are not intended to be credited against his child's claim against him. That he must account for

what they have received of the community property by way of advancement is asserted as the law by this court in Burleson v. Burleson, 28 Texas, 419. Regarding the father as a trustee, his voluntary conveyance to one of the beneficiaries of the trust would assuredly pass to his credit as against that beneficiary. The recipient of such a conveyance retaining the property conveyed is *prima facie* chargeable with what he has so received, and must account for it when a suit like the present is brought. In this case these conveyances were recognized only as diminishing the land, out of which plaintiffs were to be allotted one-half of each of the leagues. The fact was ignored that the conveyances were to the plaintiffs and that the result would be that they would receive more than they inherited from their mother.

As to the conveyances made of lands other than the community, they stand on a different footing. If in reality these conveyances were intended and accepted in satisfaction, either in whole or in part, of the interest of the devisees in the community lands, then if the parties who received them were competent to contract, or held on to the lands or proceeds after becoming so, they ought to be held to their agreement, and that too whether it was express or implied. Whilst in the case of community land so received we think the presumption, until rebutted, is that they were intended to be in discharge *pro tanto* of the child's interest, we cannot say that such presumption exists where the property conveyed is not part of the community. It is still however a question of fact and should be submitted to the jury. The charge of the court did not allow the jury to consider these advancements, except where they were equal in value to the interest of the party in property devised to others, and in thus limiting it was erroneous.

The amount found by the jury for the proceeds of the fifty or one hundred head of cattle is certainly excessive.

One reason doubtless is that the court erred in charging to the effect that W. C. Sparks was accountable for the increase of the cattle, less reasonable expenses, from the time of his wife's death. At that time (1836) the Spanish or Mexican law was in force as to descent and distribution of estates, marital rights, and kindred subjects. (Reese v. Hicks, 13 Texas, 165.)

In Cartwright v. Cartwright the general law of usufruct is treated as of force in this State up to 1840, though no special reference is made to the rights of parents. (18 Texas, 626.) In the case just cited, Chief Justice Hemphill alludes to "the right of usufruct which, under the laws of Spain, the father has in certain descriptions of property of a minor child." (Id.) The courts of Louisiana recognize the existence of this right under the Spanish law. They say: "We do not doubt that, by the law of Spain, the father is entitled, during minority, to the usufruct of the adventitious property of his children. He is not bound to account for the fruits and revenues." (Hardy v. Parkinson, 10 La., 93; L. R., Vol. 5, 435.) What is meant by adventitious property, and the rights of the father to its usufruct, appears from the following extract from Mason & Carleton's Partidas, Vol. 1, p. 553 (Law 5, title 17, part Force): "The property which children acquire while they are under the power of their father is divided into three sorts. The first is that which children make out of the property of their father. This sort of acquisition is called in Latin, *profectitium peculium;* for all they acquire in this way, or by means of their father, belongs entirely to their father, who has them under his power. The second is that which the child acquires by the labor of his hands, or by some trade or science which he possesses, or in some other way; or from a donation which any one makes to him by will; or from the succession of his mother or of any of her relations, or in any other way; or where he finds a treasure

or any other thing by chance. For that which the child acquires by any of these means, and which do not proceed from the estate of his father or grandfather, will be his own in right of property, and the usufruct thereof will belong to the father during his life, in virtue of the power which he has over his child. And this sort of acquisition is called in Latin *adventitia*, because it is derived from other sources than the estate of the father." To the like effect is the following, from Schmidt's Civil Law of Spain and Mexico, Article 237 : "The law creates a usufruct in favor of the father in the property of his son, who is subject to his authority, by whatever title, provided it has not been acquired by the exercise of a liberal profession, or by military service." And again : "Parents have the administration and usufruct of the property mentioned secondly in the foregoing article, until the children are emancipated." (Id., Article 91.) "The property mentioned secondly was that acquired by any other title than by the exercise of some profession," etc.

In Cartwright v. Cartwright, Chief Justice Hemphill says : "Usufruct is defined by Escriche as the right of using and enjoying and receiving the profits of property which belongs to another ; and a usufructuary is one who has the usufruct or right of enjoying anything in which he has no property. The usufructuary has a right to all the fruits produced by the subject of usufruct, whether they be natural—that is, produced spontaneously by the earth or animals, as timber, herbs, fruits, wool, milk and the young of cattle," etc. (18 Texas, 628.) "The young of animals, as of ewes and cows, born whilst he" (the usufructuary) "has the usufruct, belong to him, subject however to restitution, as explained in the next section." (Schmidt's C. L., Art. 242.) "If the usufruct consist of domestic animals, as ewes and cows, and one of them die, he (the usufructuary) is bound to supply its place

by a young one of the same sort of animal." (Id., Art. 258; see also, as to Usufruct, 1 White, 111.)

We think these references sufficiently establish that whilst the Spanish or Mexican law remained in force the increase of his cattle inherited by his children became the separate property of W. C. Sparks. We know of no statute changing the rights of the father over his children's property prior to the introduction of the common law, which took effect March 16, 1840. (Paschal's Digest, Article 978.) From that time the father was chargeable with the increase and proceeds of sale of as many cattle as the plaintiffs were entitled to on the death of their mother, due allowance being made for expenses, labor, and losses, as was charged by the court.

In this connection it is deemed proper to observe that our statute makes the survivor of the community accountable to the heirs of the deceased husband or wife "for their interest in the community, and the increase and profits in the same." (Paschal's Digest, Article 4648.) In adopting the Spanish law as to community we have failed to introduce a provision which seems intended to preserve to the survivor of that community the use of its accumulations for the support of the minor children of the marriage.

The course of legislation in California and Louisiana, and the amount of litigation in this State growing out of claims of heirs of the deceased member of the community, are suggestive of the inquiry whether this litigation may not be in great degree the result of the state of our statutes on that subject rather than of the system itself. (Revised Code of Louisiana, 1856, p. 104; Morse v. Morse, 20 La. An., 189; Jewell v. Jewell, 28 Cal., 236.)

As to that one of the children of W. C. and Sarah Sparks who received nothing by way of advancement in his lifetime, there is no error in the judgment save that part of it which is for money. As to the others, they

must account for whatever they received by way of advancement out of the community estate, unless they show that it was given with a different intention; and where the advancements were of other than the community estate the question of the intention with which they were made should be submitted to the jury. In either case the value of the advancements is to be estimated at the time when made, and is to be deducted from their share of the community at its value at the same time.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

NOTE.—This case, though submitted at Austin, was transferred to Tyler, where it was decided.