## GULF STATES SECURITY LIFE INS. CO. v. EDWARDS.

### No. 4789.

Court of Civil Appeals of Texas. Amarillo.

Sept. 27, 1937.

Rehearing Denied Nov. 1, 1937.

Lewis T. Carpenter and Thos. A. Carpenter, both of Dallas, and Herbert C. Martin, of Littlefield, for appellant.

Griffin & Morehead, of Plainview, and T. Wade Potter, of Littlefield, for appellee.

FOLLEY, Justice.

This suit was brought by Mrs. H. T. Edwards, plaintiff below, against the Gulf States Security Life Insurance Company, defendant below, upon an insurance policy issued by the Harvester Life Insurance Company upon the life of the husband of the plaintiff, H. T. Edwards, in which policy Mrs. Edwards was beneficiary. The policy was issued on the 20th day of February, 1934. In September, 1934, the Trinity Life Insurance Company reinsured the business of the Harvester Life Insurance Company and bound and obligated itself to comply with the terms of said policy. On June 25, 1935, the Gulf States Security Life Insurance Company reinsured the business of the Trinity Life Insurance Company and obligated itself to comply with the terms of said policy. We shall give the parties their trial court designation.

The insurance policy in question was for the sum of $2,000 and had a clause in said policy to the effect that, if the insured died by his own hand, while sane or insane, within two years from the date of the policy, the liability of the company thereunder should be limited to the amount of the premiums actually paid thereon by the insured. The death of the insured occurred on June 15, 1935, before the expiration of this two-year period. He died in the town of Littlefield, Tex., just after coming from his home about one mile north of Littlefield in a car in company with Mrs. Edwards and her children. The deceased was stricken ill suddenly on the street and carried by his wife to the hospital, where he died immediately. The doctor in attendance, Dr. J. D. Simpson, testified by deposition that in his opinion the deceased died from poison which he indicated might have been self-administered or might have been administered by someone else.

The testimony further shows that on the 25th day of June, 1935, Joe B. Woodward, then assistant secretary of the Trinity Life Insurance Company, made a settlement with the plaintiff for the sum of $1,000 and gave her a check in that amount and obtained her release for any further liability upon such policy. The defendant company pleaded this release as a defense to said suit. The plaintiff answered by supplemental petition and alleged fraud on the part of the defendant company in the obtaining of said release and in making said settlement. She alleged that the agent, Woodward, told her that he had made an investigation and found that it was generally known and believed in the town of Littlefield that plaintiff's husband had committed suicide; she further alleged that defendant's agent had falsely and fraudulently represented to her that he had talked to Dr. Simpson and that Dr. Simpson had told him that the deceased had committed suicide; that J. B. Sikes, justice of the peace at Littlefield, had said the same thing; that defendant's agent then informed the plaintiff that there was no liability against the defendant on said policy and that they would not pay her anything unless she would settle for a smaller amount than the face value of said policy; that she relied upon said representations and that the same were false and were known to be false by the defendant's agent at the time he made them, and that she would not have executed a release had such representations not been made; she also alleged that undue influence had been exercised on the plaintiff by the defendant's agent. The defendant filed a general denial of said allegations and alleged that its agent had made an investigation of the death of the deceased in

good faith, and that the settlement was made in good faith.

The cause was submitted to the jury upon special issues and the jury found, among other things, that the defendant's agent represented to the plaintiff that it was generally known and believed in the town of Littlefield that plaintiff's husband had committed suicide; that he represented to the plaintiff that Dr. Simpson had told him that the deceased committed suicide; that defendant's agent represented to the plaintiff that J. B. Sikes had told him that plaintiff's husband had committed suicide; that the defendant's agent represented to the plaintiff that the Trinity Life Insurance Company did not owe the plaintiff anything on the policy in question; that said agent represented to the plaintiff that the Trinity Life Insurance Company would not pay her anything unless she would settle for less than the face value of the policy. The jury further found that plaintiff was induced to make such settlement and release by undue influence. In connection with each of the issues as to the representations alleged to have been made by the agent to the plaintiff, the jury found that the same were false, were made by the agent to induce the plaintiff to make the settlement, that plaintiff believed said representations were true and relied thereon, and that she would not have made such settlement had such representations not been made. Upon this verdict of the jury the court rendered judgment in favor of the plaintiff for the sum of $1,000, including the statutory penalty, interest and attorney's fee in the sum of $350. From this judgment the defendant has appealed to this court.

■ Defendant's first proposition is that the court erred in admitting testimony in connection with the interrogatory of Dr. J. D. Simpson. The question was, "State whether or not you ever told any adjuster for said insurance company that H. T. Edwards died from the result of poison self-administered, or from suicide." The answer was, "No positive." This objection was based on the fact that preceding this question and answer the witness had stated that he could not say with certainty that he talked with more than one adjuster with reference to the deceased's death, but he believed he talked to representatives of two or more companies. We cannot agree with defendant's contention in this respect. A person may know that he has

not made a statement to anyone without recalling the names of the persons with whom he has conversed. We think this objection merely went to the weight of the testimony and not to its admissibility.

■ Defendant's second proposition is to the purported introduction of the following testimony from the witness Mrs. H. T. Edwards:

"Q. Had anyone ever told you before this adjuster that your husband committed suicide? A. No, sir.

"Q. That was the first time you heard that? A. Yes, and the last time.

"Q. Had you settled insurance policies with other companies on the life of your husband? A. Yes.

"Q. There had been no question about suicide in those?"

At this point the record shows that the defendant objected on the grounds that the same would be prejudicial in that the terms of other policies of other companies would not be the same as the one in question. The court sustained the objection and instructed the jury not to consider "the last question and answer." The court was not asked by the defendant to withdraw said testimony from the jury, but the court, without any request, gave such instruction. The record further shows that defendant's counsel thereafter elicited from the same witness on cross-examination the fact that she had already made settlement with other insurance companies and that the other insurance companies had not required her to give up the policies. The defendant made no objection to such evidence brought out by its own cross-examination and did not ask that the same be stricken from the record or that the jury be instructed not to consider it. Therefore, if there was any error in the admission of the above testimony by the plaintiff, we think the defendant cannot complain by reason of such because its own counsel brought out the same testimony on cross-examination. We, therefore, overrule this assignment. 3 Tex.Jur. 1258, § 880; Baker v. Farmers' Welfare Union (Tex.Civ.App.) 3 S.W.(2d) 155, and authorities therein cited; Liner et al. v. United States Torpedo Co. (Tex.Com.App.) 12 S.W.(2d) 552.

■ Defendant's third proposition is a general assertion that the evidence is wholly insufficient to sustain the verdict of the jury and the judgment of the court in that there is no evidence to sustain the fact find-

ing upon which the judgment is based. We have carefully read the statement of facts and we have found some testimony to support the finding of the jury on all material issues. The plaintiff alleged and the jury found five distinct grounds of fraud perpetrated by the agent upon the plaintiff. We do not think it is necessary for us to discuss all of these issues as to fraud. If there is evidence to support any one of them which constitutes the elements of fraud, we could not disturb the judgment on this ground. We will therefore review only two of the issues of fraud.

■ The first allegation of fraud, which is supported by the verdict, was that the agent represented to the plaintiff that it was generally known and believed in the town of Littlefield that her husband had committed suicide. The second allegation of fraud was that the agent told the plaintiff that Dr. Simpson had told him that her husband had committed suicide. The record shows that the agent had talked to some four or five people at Littlefield in regard to the death of the insured, including Dr. Simpson and J. B. Sikes, the justice of the peace. It is evident from the record that both Dr. Simpson and Mr. Sikes believed the insured had been poisoned and so informed the agent, Woodward, but neither of them made a statement to the agent that the death was suicidal. It is true that each of them indicated to the agent that it was possible that the insured had committed suicide, but each of them also indicated to him the idea of murder, which suggestion was just as prevalent as that of suicide. After the agent had made these investigations, he immediately got in contact with the plaintiff and made a settlement with her. The plaintiff alleged and testified that the agent made such representations and the jury found that he did. In each instance, in answer to the ancillary issues, the jury found that such representations constituted fraud. We, therefore, think the first two issues of fraud are supported by the testimony. Without searching out from the statement of facts isolated testimony in regard to the other issues of fraud, we overrule this assignment.

Defendant's fourth and sixth propositions are so similar in nature we shall dispose of them together. The fourth proposition is to the effect that, since the plaintiff, before signing the release, had talked to Dr. Simpson about the death of her husband, plaintiff therefore knew the alleged representa-

tions of the agent were false and could not have relied thereon. The sixth proposition is that the plaintiff admitted in her testimony that she knew in her own mind that her husband did not commit suicide, and, therefore, she could not have relied upon such representations of the agent. It is true the doctor testified that he had talked to Mrs. Edwards about her husband's death and the facts surrounding it. This happened, he says, before he talked to the adjuster. He does not say what he told Mrs. Edwards, and the record is silent in this regard. He may or may not have suggested suicide. Since the doctor says he did not tell the agent that he thought Mr. Edwards had committed suicide, it might be assumed, where there is no proof to the contrary, that he did not so inform Mrs. Edwards. The plaintiff did not attempt to make an independent investigation and the jury was not asked to so find. The court did not submit such issue to the jury and the defendant did not object to such failure. The plaintiff testified that, at the time of the death of her husband, Dr. Simpson gave her a hypodermic and she did not remember much that transpired on that occasion. She further stated that she never talked to Dr. Simpson about the facts surrounding the death of her husband until after she had made the settlement with the agent, at which time she learned that the doctor had not told the agent what the agent had said to her. She further testified that the first intimation she had ever had that the death was suicidal was that received from the agent at the time the settlement was made.

The fact that there is no evidence that the doctor had told Mrs. Edwards that her husband had committed suicide and the further fact that Mrs. Edwards specifically denied that she had ever received such information from the doctor, we cannot agree with the contention of the defendant in the fourth proposition.

■ The fact that the plaintiff testified that she knew in her own mind at the time of making the settlement that her husband had not committed suicide, we think, is immaterial in this case. The plaintiff testified that the agent, at the time of the settlement, threatened her with a long drawn out lawsuit which he said would go through all the courts at great expense to her and at no expense to the company because they had their lawyers already hired. She further testified that the agent represented to her that it would cost her more to have a law-

suit over the policy than he was offering to pay her. Under these facts, which were partially admitted by the agent, we think it is a fair conclusion that the plaintiff either feared or was attempting to avoid a lawsuit. It could be assumed that she knew that the physician that last attended her husband would not only be better qualified than she to pass on the question of suicide, but he would be a very damaging witness to her cause in court if the agent had told her the truth about what the doctor had said. If, in such a lawsuit, the defendant could have produced witnesses like Dr. Simpson and Mr. Sikes who would testify that the deceased had committed suicide, the plaintiff would certainly have been at a distinct disadvantage. We think it is not unreasonable to assume that the plaintiff, under the representations made to her by the agent as to what the doctor had told him, might have feared that the doctor or someone else had some positive evidence that the death was suicide. Then, too, we do not think it is inconsistent that the plaintiff might know in her own mind that her husband had not committed suicide, and yet, at the same time, have believed that Dr. Simpson, Mr. Sikes, and others had some positive testimony to prove that her husband had committed suicide. The agent, before the settlement was made and during the negotiations therefor, had read to the plaintiff that paragraph in the policy in regard to suicide and had insisted that it was a case of suicide and that his company, under the terms of the policy, did not owe her anything except the return of the premiums. The subject of a lawsuit was then discussed between the parties and the plaintiff was warned about the expense of a lawsuit and faced with the proposition that she could not recover anything if her husband had committed suicide. We think that, at this particular moment, the representations as to what the doctor had said and what people generally thought about the death being suicide were very material statements under the circumstances, and, even though the plaintiff knew in her own mind that her husband had not committed suicide, we think such knowledge would not remove from this case the elements of fraud under the whole theory of the plaintiff's case. We, therefore, overrule these assignments.

■ Defendant's fifth proposition complains of the court's failure to submit an issue as to whether the plaintiff had obtained the advice of E. A. Bills, an attorney at law, in regard to the settlement before the agreement was made. The defendant claims that, if the plaintiff had been advised by her attorney not to accept the offer made, it would have established the fact that she relied upon his advice and not upon the representations of the agent. We have been unable to find any evidence to support such an issue had it been submitted. Mrs. Edwards testified that she did not talk to Mr. Bills about the matter. Mr. Bills testified that he did not advise with Mrs. Edwards in regard to the settlement. The only intimation in the record of such advice is from the witness Benny Bell, who worked for the Edwards family. He was present during part of the negotiations for the settlement. He heard most of the conversation between the agent and Mrs. Edwards. Before the agreement had been perfected, he went to town of his own accord and sought the advice of Mr. Bills in regard to the settlement. Mr. Bills advised him to tell Mrs. Edwards not to be too hasty about making a settlement and that he rather doubted its advisability. Mr. Bell testified that he never revealed to Mrs. Edwards what Mr. Bills had told him. When he got back to the Edwards home the settlement had already been consummated. If the plaintiff had such advice from Mr. Bills, she did not rely upon it, but settled contrary to his purported advice. We think the testimony was insufficient to raise such an issue.

■■ The defendant's seventh proposition complains of the court's failure to submit "in some manner or form" the following issue: "Do you find from a preponderance of the evidence that Mrs. H. T. Edwards would have entered into said agreement notwithstanding said statement alleged to have been made to her by the said Woodward?"

After each of the five issues of fraud, the court submitted the following issue in regard to the alleged false representations: "Do you find from a preponderance of the evidence that the plaintiff would not have made said settlement and release if said representations, if they were so made, had not been made?"

To each of these issues the jury answered, "yes." Each of these issues was necessary to establish plaintiff's cause of action. The substance of the requested issue, as above stated, was merely a negation of the issue submitted to establish plaintiff's

cause of action. While we recognize the rule that the defendant is entitled to an affirmative submission of all of its defensive issues raised by the pleadings and the evidence, we do not think there is any law that warrants the negative submission of an issue for the defendant when that same issue has been submitted as a part of plaintiff's cause of action. Hoover v. Hamilton (Tex. Civ.App.) 14 S.W.(2d) 935; Texas Indemnity Insurance Co. v. Perdue (Tex.Civ. App.) 64 S.W.(2d) 386, and cases therein cited.

■ The eighth proposition complains of the court's failure to submit an issue as to a fiduciary relationship between the plaintiff and the defendant's agent. We think such a submission would have been merely another ground upon which the plaintiff might have recovered against the defendant, and, had the same been answered in the negative, it would not have benefited the defendant to the extent that it would have removed the elements of fraud. Certainly, the elements of fraud, as found by the jury and supported by the testimony, were sufficient to set aside the release agreement whether a fiduciary relationship existed or not. We think the failure to submit such an issue is immaterial in this case.

The ninth proposition is that the court erred in not submitting to the jury affirmatively for the benefit of the defendant the negative of each issue as to the fraudulent representations. Under the authorities cited in the seventh proposition, supra, we think it is unnecessary to give this proposition further discussion.

■ The tenth proposition is based on alleged improper argument of Meade F. Griffin, one of the attorneys for the plaintiff. The bill of exceptions in the record recites that in Mr. Griffin's closing argument to the jury he stated that counsel for the plaintiff wanted the jury to answer all of the issues in the affirmative except issue No. 8, which they wanted answered in the negative. Issue No. 8 was whether or not there was a good-faith controversy as to the liability of the insurance company on the policy. Defendant asserts that such remarks constituted an argument as to the results of the answer of the jury to the special issues. The bill of exceptions shows that Mr. Griffin had just displayed the policy of insurance before the jury and stated that the policy obligated the company to pay Mrs. Edwards $2,000 and not $1,000, and

that the company still owed her $1,000. We do not believe such statements, as shown by the bill of exceptions preserved in the record, would amount to an instruction to the jury as to how they should frame their answer to fix liability on the defendant. It does not advise the jury of the legal effect of their answers to the questions submitted. We think the argument amounted to no more than a mere statement as to the manner in which the plaintiff and her counsel desired the issues to be answered. We do not think such argument is reversible error. 41 Tex.Jur. 1203, par. 341, and cases therein cited.

Defendant's eleventh, twelfth, and thirteenth propositions complain of the court's refusal to grant a new trial on the ground of alleged jury misconduct prejudicial to the rights of the defendant. The allegations in the motion for a new trial stated that the jurors had agreed among themselves that the plaintiff should recover and thereafter framed the answers to accomplish such a result. The motion also alleged that the jury discussed the fact that the defendant had not proved the death was suicide. It was further alleged that some juror had stated that the defendant should have had an autopsy to determine the cause of the insured's death. It was also alleged that some other juror remarked that an autopsy would not have proved suicide even though poison had been found in the body.

■ Four of the jurors were placed on the witness stand at the hearing on the motion for a new trial and each gave his version as to what transpired in the jury room. No one of them said that there was any agreement as to which party should recover, and each denied that they framed the answer so that the plaintiff might recover. It was proved that there was some discussion to the effect that the defendant had not proved the death was suicide and the question of an autopsy was discussed. Each of the jurors who testified said that the alleged misconduct occurred after all the issues in the court's main charge had been answered. From their testimony, the alleged misconduct occurred during the time two or more of the special issues requested by the defendant were being considered. All of the jurors agreed that there had been little or no discussion on the issues in the court's main charge, all of which had been answered without controversy immediately upon their retirement. There was no proof or intimation of any misconduct before the

jury reached the three special issues of the defendant. Since all of the alleged misconduct took place while the jury was considering these special issues, we do not think any error is shown for the reason that these three special issues, as given by the court, were not ultimate fact issues, but were immaterial issues to which the defendant was not entitled.

The first special issue inquires of the jury as to whether the agent's contention that the death was suicide was made by the agent in good faith in the belief that his contention was well founded. The jury had already answered in the court's main charge that there was no good-faith contention as to the liability of the insurance company on the policy of insurance, and further that the agent did not have reasonable grounds to believe that plaintiff's husband had committed suicide. But irrespective to these findings adversely to the defendant, we think the rule is well settled in Texas that knowledge on the part of one making representations that they are false is not a necessary element in actionable fraud. It is equally well settled that in order to establish fraud it is not necessary to show that the representations were made with the intent to deceive, but the maker of the statement may be liable, no matter how innocent his purpose. 20 Tex.Jur. 42, 44, and cases therein cited. The above special requested issue was, therefore, immaterial, regardless of how it might have been answered by the jury.

The second special issue inquired of the jury whether Mrs. Edwards, prior to the settlement, had discussed with Dr. J. D. Simpson the cause of the death of H. T. Edwards, and the facts surrounding such death. The jury answered this issue in favor of the defendant, that she had so discussed the death with the doctor. The trial court disregarded such answer and rendered judgment for the plaintiff, and we think he was correct in so doing. Even though Mrs. Edwards had discussed the death of her husband with the doctor, the above special issue and answer thereto does not reveal what he told her or what facts surrounding the death were revealed to her. If there was any vice in the conduct of the jury in regard to this issue it was answered in the most favorable light for the defendant, and, therefore, any error would be harmless as far as this issue is concerned.

The third special issue asked the jury if the controlling factor which induced Mrs. Edwards to sign the release in question was the payment of $1,000 by the defendant company. We think this issue is immaterial for the reason that it is not necessary, in order to establish fraud, that such fraud should have been the sole cause of making an agreement. It is sufficient to show that such fraud was merely a material factor in inducing the insured party to enter into the agreement, without which, no contract would have been made. 20 Tex. Jur. 52, par. 30, and cases therein cited.

Since all of the alleged misconduct occurred, as shown from the testimony, while the jury was deliberating upon these special issues, and after all other issues had been answered, none of which were changed by such discussions, we think any wrong that may have been committed by the jury was harmless error. Since these issues were immaterial, we do not deem it necessary to determine whether there was any misconduct upon the part of the jury.

Finding no reversible error in the record, the judgment of the trial court is affirmed.