### KELLER et al. v. DOWNEY.

#### No. 3949.

Court of Civil Appeals of Texas. Beaumont.
Jan. 14, 1942.

Rehearing Denied March 25, 1942.

Merrill & Scott, Frank L. Merrill, R. E. Seagler, E. E. Townes, W. W. Kirkpatrick, and E. R. Campbell, all of Houston, and Charles L. Black, of Austin, for appellants.

Thomas B. Greenwood, of Austin, Collins, Jackson & Snodgrass, of San Angelo, and H. Fletcher Brown and Thomas W. Blake, Jr., both of Houston, for appellee.

WALKER, Chief Justice.

On the 8th day of February, 1929, appellee, Mrs. Clara May Downey, joined by her husband and her mother, Mrs. Grace C. Ruby, executed to appellant, Mrs. Grace Keller, as a gift a warranty deed conveying to her 76.52 acres of land out of the Thomas Choate League in Harris county, Texas. The deed was executed in Montgomery county, Maryland; the certificate of acknowledgment of appellee, in all respects regular as to form, was by J. J. Shoemaker, a notary public in and for Montgomery county, Maryland.

This suit was instituted by appellee in the statutory form of trespass to try title against appellants, Mrs. Keller and Humble Oil & Refining Company, to recover the 76.52 acres of land above referred to. On the eve of the trial, appellee filed her affidavit that the deed was void as to her for the reason that when she signed it she was a married woman, and did not appear before the notary public for the purpose of acknowledging it, and that his certificate that she appeared before him personally was false. Appellants answered by general demurrer, general denial, and plea of not guilty; Mrs. Keller answered further by way of cross action in the form of the statutory action of trespass to try title, and by pleas of limitation. On the verdict of the jury, judgment was for appellee for an undivided one-half interest in the land in controversy, and cancelling her deed to Mrs. Keller of date the 8th day of February, 1929, and the mineral lease held by Humble Oil & Refining Company under Mrs. Keller, on the land in controversy, insofar as these instruments affected appellee's title to the land in controversy. Appellants duly prosecuted their appeal to the Galveston Court of Civil Appeals; the case is on our docket by order of transfer by the Supreme Court.

The jury found that appellee did not at any time appear in person before the notary public, J. J. Shoemaker, for the purpose of acknowledging the deed in issue. Appellants attack this finding as being without support in the evidence, and as being against the great weight and preponderance of the evidence. Appellee, her husband, and her mother testified that she signed the deed in her mother's bedroom and that the notary was not present. The evidence offered by appellee fully supports the verdict of the jury. Lummus v. Alma State Bank, Tex.Civ.App., 4 S.W.2d 195; Chester v. Brietling, 88 Tex. 586, 32 S.W. 527; Robertson v. Vernon Tex.Com.App., 12 S.W.2d 991, approving the holding in Tex.Civ.App., 3 S.W.2d 573; Putman v. Coleman, Tex.Civ.App., 277 S.W. 213. Under these authorities, whether or not appellee appeared before the notary for the purpose of acknowledging the deed was to be determined on the preponderance of the evidence, like the general fact issues in all civil cases. To support this issue, appellee was not required to attack the notary's certificate by alleging fraud, coercion or undue influence; appellants cannot, on this issue, invoke the proposition that the truth of the recitals in the notary's certificate can be attacked only by evidence clear, cogent and convincing.

Appellants contend that, even if the jury's finding has support in the evidence that appellee did not appear before the notary for the purpose of acknowledging the deed, yet, on the undisputed evidence, on the verdict of the jury the notary's certificate "was not entirely fraudulent" but was made "at her implied request as the result of a previous understanding or established custom to dispense with her personal appearance." On Mrs. Downey's evidence, she never appeared before the notary for the purpose of acknowledging the deed in issue, and never asked him to take her acknowledgment to this deed; she testified to a general custom whereby this notary would affix his certificate to her deeds when presented to him with her genuine signature thereto. These facts did not invoke the jurisdiction of the notary to take appellee's acknowledgment; his jurisdiction not being invoked, his certificate was void, and without appellee's acknowledgment thereto the deed in issue was void as to her. Gulf Production Co. v. Continental Oil Co., Tex. Sup., 132 S.W.2d 553; Robertson v. Vernon, supra.

Appellee's father died in February, 1903. On her application filed in April, 1903, appellee's mother, Mrs. Ruby, was appointed statutory community survivor of the community estate left by her deceased husband, John H. Ruby, appellee's father, and duly qualified as such. As her father's heir, appellee inherited a one-half interest in the community estate, subject to the community administration; the property in issue was a part of the community estate. In 1907, in a partition suit filed by appellee, by her next friend, in district court of Harris county against her mother, judgment was entered partitioning the estate, but not partitioning the land in controversy. The judgment of partition recited that Mrs. Grace C. Ruby, the widow of John H. Ruby, had qualified as survivor of the community estate of John H. Ruby; the judgment further recited that Mrs. Ruby "has fully administered upon said community estate and has paid off all the debts existing against it and has discharged all of the expenses incurred by her in the administration of the estate. * * * It is further ordered, adjudged and decreed by the Court and the court so orders, adjudges

and decrees that the minor plaintiff, Clara May Ruby do have and recover from this defendant, Grace C. Ruby, the sum of four thousand two hundred and Fifty-four dollars & ninty-two ($4,254.92) cents as her share of the money in the hands of the defendant, belonging to the community estate of John H. Ruby, deceased, and that upon the defendant filing with the Clerk of this court a receipt for said amount from the guardian of the estate of the said Clara May Ruby, when one shall be appointed and qualified that the said defendant, Grace C. Ruby, and the surety on her bond as survivor of the community estate of John H. Ruby, deceased, be relieved from all further liability in the matter of said community estate." No additional order was shown, closing the administration, and there was no evidence that Mrs. Ruby ever paid the judgment or that the "receipt" was filed. On these facts, appellants contend that the deed in issue, being valid as to Mrs. Ruby, must be construed as conveying the full title to the land in controversy independent of appellee's joinder therein, since it must be conclusively presumed that Mrs. Ruby executed it "in her capacity of community survivor." This contention is denied. The district court of Harris county, in the partition suit of 1907 by appellee against her mother, had jurisdiction to close the administration. Cox v. Gaines, Tex. Civ.App., 45 S.W.2d 444. Having the power to close the administration, and having found that all debts of the administration had been paid, and that the estate had been fully administered, the court ordered the administration closed, subject to the filing of receipt by appellee's guardian to be appointed in the future. It is our conclusion on these facts that this judgment must be construed as closing finally the administration. Henderson v. Lindley, 75 Tex. 185, 12 S.W. 979; Stewart v. Morrison, 81 Tex. 393, 17 S.W. 15, 26 Am.St.Rep. 821. The failure of appellee to show that she or her guardian filed the receipt called for by the judgment did not leave the administration open. Again, the deed in issue being a deed of gift, appellants had the burden of showing that Mrs. Ruby—if the administration was not closed by the judgment of partition—had the power to give the property to Mrs. Keller, acting in her capacity of survivor of the community. Bordages v. Stanolind Oil & Gas Co., Tex.Civ.App., 129 S.W.2d 786. The facts of this record affirmatively deny her right, as community survivor, to give the property away.

Leatherwood v. Arnold, 66 Tex. 414, 1 S. W. 173; Sparks v. Spence, 40 Tex. 693, 694.

On the following facts found by the jury, appellants assert that appellee was estopped to assert the invalidity of the deed: When appellee signed the deed in issue she knew that its purpose was to convey the title to the land in controversy to Mrs. Keller, and that it would be delivered to Mrs. Keller with her signature thereon and with her acknowledgment attached thereto in due form of law; that at the time she signed the deed she ought to have known that some person or corporation would likely purchase the land in controversy from Mrs. Keller; that at the time she signed the deed there was a custom between her and the notary that, without her personal appearance before him, he would attach to deeds bearing her genuine signature his certificate of acknowledgment in due form of law, and on that custom he so attached his certificate; that when appellee signed the deed she understood that it would be sent to the notary under this general custom; that when she signed the deed in issue, she did not know that she had any interest in the land in controversy. Appellants' proposition of estoppel is denied. To estop a married woman, where her acknowledgment is taken without her personal appearance before the notary, she must commit some act of positive, affirmative fraud, and the facts found by the jury do not constitute positive, affirmative fraud. Daniels v. Mason, 90 Tex. 240, 38 S.W. 161, 59 Am.St.Rep. 815; Huss v. Wells, 17 Tex.Civ.App. 195, 44 S.W. 33. The facts found by the jury, invoked by appellants on this proposition of estoppel, fall reasonably within the facts of Gulf Production Co. v. Continental Oil Co., supra; Owens v. New York & Texas Land Co., 11 Tex.Civ.App. 284, 32 S.W. 189; Putman v. Coleman, Tex.Civ.App., 277 S.W. 213; Cosgrove v. Nelson, Tex.Civ.App., 269 S.W. 891.

Appellants make the contention, on the undisputed evidence, that at the time this suit was filed appellee had already received more than one-half of the net community estate of her mother and her deceased father. This contention is denied, even if it be conceded that appellants have the right to invoke it. Most of the property, which appellants under this proposition claim that appellee received, was the property of Mrs. Ruby, awarded her by the partition judgment; the transfer of this prop-

erty by her to appellee as a gift could not constitute an extinguishment of appellee's title to the property in controversy.

We overrule the contention that appellants should be quieted in their title to the property in controversy on the doctrine of equitable partition. Necessary parties were not in the case to support equitable partition—Mrs. Ruby was not a party nor were her grantees of the estate. The burden of alleging facts raising this issue rested upon appellants. Simpson-Fell Oil Co. v. Stanolind Oil & Gas Co., 136 Tex. 158, 125 S.W.2d 263, 146 S.W.2d 723; McGee v. Stark, Tex.Civ.App., 127 S.W.2d 589. The facts do not constitute equitable partition. Many years after the execution of the deed in issue, Mrs. Ruby conveyed to appellee a tract of 49 acres of land which was not included in the judgment of partition. The value of this land was not shown in relation to the land in controversy as of the time this case was tried, and that was appellants' burden. Thómas v. Southwestern Settlement & Development Co., 132 Tex. 413, 123 S.W.2d 290. Holding under appellee's void deed, appellants could not claim her title on this theory, simply by showing that the mother had conveyed appellee a tract of 49 acres of land belonging to the community estate, even if that issue was available to them under their pleading and without necessary parties. This proposition called for a complete audit and accounting of the entire estate. As a corollary of this proposition, appellants contend that appellee in her action of trespass to try title could not recover the land in issue "because she did not discharge the burden cast on her by law to show, as against those rightfully in possession as admitted co-owners, just what her undivided interest was." Appellee clearly established her title to one-half interest in the property as an heir of her father. The burden rested on appellants, by way of defense, to plead facts in rebuttal of appellee's prima facie title. But if this issue was available to appellants without an affirmative plea, nothing was shown which, as a matter of law, reduced appellee's interest in the land in controversy; not having asked for its submission to the jury, the issue was waived.

On their theory of equities between appellee and her mother in the division of the estate, no conclusive presumption can be invoked by appellants that the conveyance to appellee by her mother of the 49 acres of land referred to was by way of advancement. At the time appellee signed the deed in issue and at the time her mother conveyed her the 49 acres of land, appellee did not know that she owned an interest in the land in controversy. On the undisputed evidence, the tract of 49 acres of land, in fact, was conveyed to appellant as a gift to her by Mrs. Ruby, with no intent on the part of either of them that the gift was by way of an advancement out of the community. Mrs. Ruby had been discharged as community survivor in 1907, and was under no obligation to account to appellee on the community estate. Spark v. Spence, supra, denies appellants the right to invoke the proposition of advancement.

Appellee was not barred from offering her documentary evidence on Mrs. Keller's objection—Humble Oil & Refining Company not joining in the objection—that she did not timely file her abstract of title. At the commencement of the trial, to meet Mrs. Keller's objection, with leave of the court, appellee filed an amended abstract of title containing the very instruments objected to. The court did not err in granting this permission. Art. 7379, R.C.S.1925.

Appellee's testimony that she did not know of her interest in the land in controversy at the time she signed the deed in issue was admissible to rebut appellants' theory against her of active intentional fraud. 17 Tex.Jur. 138. The testimony of Enjor Christenson that appellee appeared before Mr. Thomas, a notary public, at a later date in connection with a different deed was not subject to the objection that it was immaterial. At the time the objection was made the same testimony was already before the jury without objection, and no motion was made to strike the prior testimony. Johnson v. Hodges, Tex.Civ. App., 121 S.W.2d 371. Appellants did not object to the testimony on the ground that it was prejudicial; the admission of immaterial testimony is not error unless it is calculated to influence the minds of the jury. Appellants by their cross examination of the witness brought out substantially the same facts covered by appellants' objection, thereby waiving their exception of immateriality. Gulf States Sec. Life Insurance Co. v. Edwards, Tex.Civ.App., 109 S.W.2d 1125.

A diary was in evidence containing a material statement. Appellants' theory was that the entry in the diary was made as of the date of the deed in issue,

while appellee contended that the entry was made subsequent to the filing of this suit in 1939. No testimony was offered on the issue of the age of the writing. Appellants' counsel argued to the jury, without supporting evidence, that he saw the entry shortly after the diary was discovered, and if the writing had not been old, he could have determined that fact. In reply, appellee's counsel stated to the jury in effect that he had consulted handwriting experts, and had learned that the age of writing could not be determined by an examination. The argument of appellees counsel was "invited error," being directly responsive to the argument of appellants' counsel. 41 Tex.Jur. 798; D. & H. Truck Line v. Lavellee, Tex.Civ.App., 7 S.W.2d 661; Crim v. Hunter, Tex.Civ.App., 97 S.W.2d 979; Dallas Joint Stock Land Bank v. Lancaster, Tex.Civ.App., 100 S.W.2d 1029, 1033. The argument was not objected to at the time it was made, but for the first time on motion for a new trial; its injurious effect, if any, could have been removed by an instruction by the court, which he certified he would have given had the objection been made. On this statement, the argument was not error. 41 Tex.Jur. 821.

It follows that the judgment of the lower court should be in all things affirmed, and it is accordingly so ordered.

Affirmed.

### On Rehearing.

Since we filed our original opinion, the Supreme Court has withdrawn its opinion in Gulf Production Co. v. Continental Oil Co., 132 S.W.2d 553, cited by us, by substituting its opinion reported in —— S.W.2d ——.[1] But the propositions upon which we cited that case were not modified nor withdrawn in the holdings of the Supreme Court in its new opinion. In further support of our conclusion that Mrs. Clara May Downey, appellee, was not estopped on the facts found by the jury to assert the invalidity of the deed in issue, we cite Burkhardt et ux. v. Lieberman et al., Tex.Com.App., 159 S.W.2d 847.

On a careful review of appellants' motions for rehearing, it is our conclusion that they should be overruled, and it is accordingly so ordered.

COMBS, Justice (dissenting).

I am unable to concur in the majority holding that appellee, Mrs. Downey, is not estopped to deny the validity of her deed. The undisputed facts show that when Mrs. Downey signed the deed she did so with full knowledge of its contents and that it purported to convey her interest in the property involved. The record reflects that she is possessed of considerable property and is a business woman of experience. When she signed the deed she knew every fact which an explanation of it by the notary could have made known to her. She signed it freely and voluntarily. The record leaves no doubt that she would have personally appeared before the notary except for the inconvenience of having to travel a few miles to his office. She, not the husband, made the arrangement with the notary to certify her acknowledgment without her personal appearance before him. The husband was merely used as a convenient messenger to carry the deed, with the signature of Mrs. Downey and the form of her separate acknowledgment already attached, to the notary for execution. Mrs. Downey knew of course that the notary would execute the form of acknowledgment and that the deed would be delivered to the vendee purporting regularity in every respect. She knew that persons dealing with the property in Texas, far from her home in Maryland, would have no opportunity to learn of the falsity of the notary's certificate and would have no reason to make inquiry but instead would rely upon the truth of the recitals in it. Through her acts the deed was placed in the process of delivery, and was delivered, to the vendee who accepted it without knowledge of any irregularity or infirmity in the acknowledgment. Thus, it seems to me she committed "positive affirmative acts" which in law amounted to fraud. Not only was her signing the deed a "positive act" but she was party to the fraudulent execution of the certificate by the notary who acted not merely with her knowledge but at her instance and request. The deed was placed of record and the Humble Oil & Refining Company, acting in good faith by virtue of the lease from the vendee, expended large sums of money in the development of the property for oil. It was only after the property, which was of modest value only at the time her deed was made, had been made quite valuable by the good faith efforts and expenditures of others that Mrs. Downey appeared upon the scene in Texas to assert the invalidity of her deed.

---

[1] Rehearing pending.

In view of these undisputed facts, it seems to me the judgment in this case, which destroys the deed which Mrs. Downey made and vests her with title to the property which she purported to convey, and which her vendee, and those claiming under her, in good faith believed she had conveyed, is so manifestly inequitable and unjust that it should not be permitted to stand.

It is apparent from the opinion of Chief Justice WALKER that the majority are of the view that Texas court decisions leave no alternative except an affirmance of this judgment. As before stated, I do not subscribe to that view. The majority recognize the rule to be that a married woman may be estopped to deny the validity of her deed, regular in form, where she has been guilty of some "intentional, affirmative act of fraud." But they hold to the view, apparently, that she committed no "affirmative fraud" because she did not sign the deed with an actual intent to deceive. As I see it, the fact that Mrs. Downey did not act from bad motive is not controlling. I accept as true their conclusion that she was not guilty of any intentional fraud or wrongdoing when she executed the deed in 1929. But even so in law what she did amounted to a legal fraud sufficient to estop her from denying the validity of her deed. Guaranty Bond State Bank v. Kelley, Tex. Com.App., 13 S.W.2d 69, 71, and authorities cited. In the cited case the rule is thus stated: "That fraud which will estop a married woman is not necessarily intentional fraud, but rather any intentional affirmative act of hers which operates as a legal fraud, whether so intended or not."

Clearly, appellants have acted upon what Mrs. Downey did to their injury. They were as effectively deceived as if her motive had been bad. Her conduct was not merely passive, it was active. And she should be held accountable for the plainly foreseeable results of it. Otherwise she, an intelligent, experienced, business woman, will be permitted to repudiate a deed which she freely and voluntarily made to the serious damage and wrong of the appellants. Equity should not permit her to do so.

I have expressed above by reasons for the view that Mrs. Downey is estopped under principles of equity repeatedly recognized by the decisions of our courts. But even if I should be wrong and the majority right in the interpretation placed on existing rules of decision, then this case affords a striking example of the necessity for a re-examination of the decision made law. For if Mrs. Downey may repudiate her deed and recover the property in accordance with the judgment in this case, then many land titles grounded upon conveyances by married women are open to similar attack. No prudent title examiner can afford to pass a title containing a married woman's deed in the chain without making personal inquiry to determine whether or not she in fact appeared before the notary as certified by him in his certificate of acknowledgment. This case also suggests the desirability that the matter be called to the attention of the Legislature with a view that the married woman's separate acknowledgment statute be repealed altogether.

Because of the importance of this question, the writer will indulge the freedom of the "dissenter" to write freely upon the subject. In doing so he may be rushing into a wordy discussion of a question about which wiser judges have written sparingly or felt bound by judicial precedent and decorum to discuss with more restraint and caution. But since the end sought is to direct attention to an archaic statute and to certain unsound principles of decision made law which have made of it a convenient vehicle of fraud, the attempt would seem to be justified.

The Texas married woman's separate acknowledgment statute (Vernon's Ann.Civ. St. Art. 6605) should be repealed. It is a relic of the dark ages, brought into the Texas statute in an early day and if it ever had any useful place in our statutes its retention can no longer be justified in reason and common sense.

In 1922 the late D. Edward Greer of the Houston Bar wrote an interesting article for the Texas Law Review on this subject. See "A Legal Anachronism: The Married Woman's Separate Acknowledgment of Deeds." I T. L. R. 407. In that scholarly article, Judge Greer traced it to a statute or rule of court Modus Levandi Fines adopted in the eighteenth year of Edward I, about the year 1290. It was adopted into the statutes of Texas in 1841, and with an amendment in 1846 is the statute we have today. It will be seen that it arose in England at a time when the common law vested the husband with absolute title to all personal property of the wife and a considerable interest in, and complete dominion over, the separate real estate. Also, the state of society was such that the husband in fact ex-

erted dominion over the wife to the extent that the law recognized his right to administer corporal punishment to her. According to Blackstone, the humane judges of the period soon came to the relief of the wife to the extent of announcing a rule that the husband should not be permitted to beat her with a whip larger than could be passed through her wedding ring. But even so the wife was usually uneducated and little more than a vassal.

Judge Greer, in his article, questioned whether there was ever any reason for the adoption of the married woman's separate acknowledgment statute in Texas. But in justice to the Founding Fathers it should be remembered that in the 1840's it was not the general custom in Texas for women to be well educated. Neither did they engage in business or the professions. Quite likely the statute was originally aimed mainly at preserving the homestead to the wife and children. That the early Texas lawmakers were solicitous in promoting home ownership and in protecting the family against improvident alienation of the homestead is clearly evidenced by the fact that they gave to Texas, and to the world, the first comprehensive homestead law in recorded history. Considering the state of society and position of the wife in the home under pioneer conditions, a pretty good argument could be made in support of the statute when it was first enacted. But regardless of whether or not it then served a useful purpose, it has long since ceased to have any useful or legitimate place in our statute book.

But the statute itself is not nearly so bad as the application given it by court decisions construing it. Results such as we see in this case are the product of court made law, rather than the statute itself. It would be unjust to the pioneer framers of the statute to assume that they ever intended that it should do more than protect the wife from alienation of her property or homestead by duress, fraud or deception. Neither they nor the great jurists who first began to construe and apply it could have foreseen that the precedent bound courts of a later day would so construe it as to make of it an instrument of positive fraud and oppression. A reading of the succession of opinions construing the statute through the years reveals an interesting example of how our precedent system tends to congeal "dicta" and "doctrines" into inflexible rules of de-

cision which do not yield to common sense adaptation and application to the attainment of justice under changed conditions. Perhaps the main root of the trouble is to be found in a decision when upon "bad facts" it was held that in the case of a married woman's deed her privy acknowledgment and not her signature works the conveyance. So, if her acknowledgment be not taken in substantial compliance with the statute there is no conveyance—the deed is void—and hence there can be no innocent purchaser under it. It soon became necessary to inject various "doctrines" and "distinctions" in an effort to mitigate the harsh effect of the rigid application of that principle. That system has led to the kind of results we see in the instant case.

I have not cited the decisions illustrative of this process because in doing so I might seem to criticize the great jurist who wrote some of those decisions. I have no such thought in mind. The difficulty arose by gradual growth of "doctrines" and "principles," mostly dicta pronounced on "bad facts." It should be said in justice to the opinion writers who wrote many of those decisions that they had in mind their obligation to do justice in the particular case, and hence indulged the judicial prerogative of using dicta with no thought that their successors would garner the various dicta and "doctrines" and weld them into a rigid rule of decision. But such has been the result, and it has come about by a process of legal reasoning, based on prior decisions, which in the days of King Edward I would justify the husband beating his wife with a cat-o-nine-tails on the theory that that instrument could be passed through the wedding ring one tail at a time.

But regardless of how the present rule of decision came about, we have a striking example of the harmful effects of it in the case before us. A reading of the court decisions will reveal many more such examples in recent years. The married woman's separate acknowledgment statute as construed and applied by our courts violates all rules of common sense as well as justice. It assumes that when an intelligent woman gets married she thereby dooms herself to a state of imbecility for the duration. This theory is all the more remarkable when we reflect that it also assumes that she is instantly restored to complete possession of her faculties and powers of discretion the moment her "disability" is planted beneath the clods of the silent val-

ley, or the merciful intervention of the divorce court frees her from her "oppressor." And once so freed she can execute conveyances and make contracts even as other people until perchance she joins herself to another husband, whereupon she suffers a total mental relapse.

The whole thing is, of course, utterly ridiculous. Most other states that originally had such a law have long since repealed it. And in other states which retain it the courts in recent years have liberally construed it so as to greatly mitigate its effect in promoting fraud. In 1 Am.Jur. p. 382, Sec. 158, it is said: "The peculiarities of the law of acknowledgments which have existed with respect to married women are rapidly disappearing. Under the modern rule no distinction is made between the wife and any other person, either in the manner of execution or the acknowledgment of a deed conveying real estate, or other sort of instrument. The judicial attitude toward acknowledgments of married women, likewise, has kept pace with social evolution. Formerly, the courts were most zealous to protect the wife from the supposed dishonesty and corruption of the husband, and the strictest compliance with the statutory requirements was exacted. To-day the judges view the acknowledgment of the wife not very differently from that of the feme sole. Therefore, the earlier cases holding married women's acknowledgments to be invalid should not be taken literally, but an allowance should be made for this change in judicial policy."

The text writer should have said that allowance should be made for a liberal change in judicial policy in every state except Texas. If there has been the slightest liberalizing of Texas court decisions construing this statute, it is so little as to be hardly visible. We are still construing the statute as though we were completely oblivious of changed conditions in this day of education and enlightenment, when our women are universally recognized as being just as capable of protecting their rights as are the men. The existence of the married woman's separate acknowledgment statute is an insult to the intelligent women of Texas. (It is no less an insult to the husbands.) It ought to be repealed at the first opportunity.

But I also believe that the courts should not wait for the Legislature to act. Much of the harmful effect of the statute can be removed by court decision, giving it rea-

sonable, common sense interpretation. It seems to me it should be held that when a married woman executes a deed, purporting regularity and validity on its face, the deed is not void by reason of her failure to be privily examined by the notary, but only voidable upon a showing that she executed the instrument through duress, fraud or deception. But even if it is not desirable to go that far, it should be held that where a married woman, as in the present case, freely executes a deed, with knowledge of its contents, and without duress or deception, induces or permits a notary to attach a proper certificate of acknowledgment thereto, she should be estopped to deny the validity of the deed as against all persons purchasing through or under it without knowledge that the acknowledgment was not properly taken.

It follows that I think the judgment in this case should be reversed and rendered.